449 A.2d 630

**COMMONWEALTH of Pennsylvania**

v.

**Robert RENO, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 1980.

Filed Aug. 13, 1982.

Norman A. Levine, New Castle, for appellant.

Donald E. Williams, District Attorney, New Castle, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order denying a petition to withdraw a guilty plea. Appellant argues that the petition should have been granted because his guilty plea colloquy was deficient in several respects. We agree, and therefore reverse.

Appellant had been charged with rape and was tried in February 1976. The trial ended on February 18, 1976, in a

hung jury. On February 23, 1976, appellant, pursuant to a plea bargain, pleaded guilty to aggravated assault.[1]

■ Appellant argues, Appellant's Brief at 9–10, and the Commonwealth admits, Appellee's Brief at 11, that during the colloquy he was not informed of his right to file a petition to withdraw his guilty plea prior to sentencing or of his appellate rights. When the lower court has failed to inform the defendant of his right to file a petition to withdraw a guilty plea, and the consequences of a failure to do so, an invalid waiver of the right to jury trial is conclusively inferred. *Commonwealth v. McGarry*, 280 Pa.Superior Ct. 527, 529 n.2, 421 A.2d 847, 848 n. 2 (1980) (citing cases). *And see, Commonwealth v. Vigue*, 279 Pa.Superior Ct. 46, 420 A.2d 736 (1980).

■ The colloquy was further deficient in that the lower court did not ascertain whether there was a factual basis for the guilty plea. *Commonwealth v. Stolle*, 254 Pa.Superior Ct. 483, 386 A.2d 53 (1978); Comment, Pa.R.Crim.P. 319. The Commonwealth admits this defect, too, Appellee's Brief at 8–9, but argues that:

> It was therefore made clear to the defendant although such clarity does not appear in the plea hearing record because reference was made to a prior record not recited of the nature of the charge and acts of which he was being asked to enter a plea.
>
> *Id.*

This argument echoes the lower court's holding that "[d]ue to the evidence produced at trial the previous week, it was clear that a factual basis for the plea was present and the plea was therefore accepted." Slip op. at 3. We are unable to subscribe to this reasoning, for Pa.R.Crim.P. 319 makes

---

1. Appellant did not appear on the date he was scheduled to be sentenced, July 26, 1976. He was later found and on October 5, 1979, was sentenced to two to five years in prison. In the meantime, he had sustained a spinal cord injury in a fall from a roof, which rendered him a paraplegic. Appellant argues that his sentence was excessive in view of his physical condition. We do not reach this issue. *Commonwealth v. Paige*, 287 Pa.Superior Ct. 133, 142 n.3, 429 A.2d 1135, 1140 n. 3 (1981).

inquiry into the factual basis for the plea mandatory at the colloquy. *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1978). Moreover, the evidence that both the lower court and the Commonwealth refer to as having been produced at the previous trial is not of record. We therefore cannot give it any effect; this rule applies whether the evidence in question is recited in a brief, *Marine Bank v. Huhta*, 279 Pa.Superior Ct. 130, 420 A.2d 1066 (1980), or in the opinion of the lower court, *In re Custody of Frank*, 283 Pa.Superior Ct. 229, 423 A.2d 1229 (1980).

■ Finally, the colloquy was deficient in that the lower court did not inform appellant that the members of the jury had to be unanimous in their decision. This omission was reversible error. *Commonwealth v. Dello Buono*, 271 Pa.Superior Ct. 572, 414 A.2d 631 (1979); *Commonwealth v. Carl*, 267 Pa.Superior Ct. 156, 406 A.2d 566 (1979); *Commonwealth v. Coxson*, 262 Pa.Superior Ct. 14, 396 A.2d 460 (1978).

Given these several deficiencies in the colloquy, we conclude that appellant was entitled to withdraw his plea.

Reversed.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

I would affirm the judgment of sentence.

On October 11, 1975, Robert Reno, appellant herein, was charged in a criminal complaint with the crime of rape, allegedly having had sexual intercourse with a female age 18, without her consent, by force and she not being his spouse, on October 10, 1975, in Shenango Township, Lawrence County. The case came to trial in February of 1976 before the Honorable John F. Henderson, President Judge and a jury with Alfred V. Papa, Esquire representing Robert Reno. The case ended with a "hung jury."

One week later, appellant, Robert Reno, was again before Judge Henderson with his counsel, Mr. Papa and entered into a plea bargain. The following appeared, *inter alia*, at the plea colloquy:

THE COURT: Mr. Reno, you are charged on an indictment at No. 810 of 1975 with one count of rape, a felony of the first degree. You plead not guilty to these charges and this case was tried last week. At trial, the jury was unable to arrive at a verdict. It has been indicated to the Court now that you are prepared to enter a plea to lesser charges than this offense, is that correct?

MR. RENO: Yes.

MR. PAPA: In Mr. Reno's behalf, that is correct and he can speak directly for himself.

THE COURT: Mr. Reno?

MR. RENO: Yes.

THE COURT: There has been some plea bargaining, I think, between Counsel and the District Attorney's office, is that correct?

MR. PICCIONE: Yes, there has, Your Honor. If the Court please, Mr. Reno has agreed to plead guilty to the charge of aggravated assault. Specifically, it would be under Section 2702–A4 of the Crimes Code, which charges aggravated ass[a]ult, a misdemeanor of the first degree. In return for this plea of guilty, Your Honor, the Commonwealth has agreed that at the time of sentencing, it would recommend a nol-pros of the rape charge at No. 810 of 1975 or a reduction of the charge of rape to aggravated assault.

. . . .

THE COURT: You will be, if you enter this plea, required to come into Court and be sentenced just as though you had gone to trial and been found guilty by a jury, and at that time you will be sentenced under a Statute that calls for a maximum period of imprisonment of five years and a maximum fine of ten thousand dollars and that's the Statute under which you will be sentenced. Do you understand that?

MR. RENO: Yes.

THE COURT: Has there been any other plea bargaining that hasn't been mentioned?

MR. PICCIONE: There has not, Your Honor.

THE COURT: Has there been any promises other than the promises that might have been involved in this plea bargain that induced you to change your plea or to enter a plea of guilty to the charge of aggravated assault?

MR. RENO: No, sir.

THE COURT: Any threats, coercion or force used against you that induced you to enter this plea?

MR. RENO: No.

THE COURT: Understanding all these things and the nature of the waivers you are making, are you prepared to enter a plea now of guilty to the charge of aggravated assault?

MR. RENO: Yes.

THE COURT: Alright, we will direct that the plea be taken.

MR. PICCIONE: May it please the Court, Your Honor, at No. 810 of 1975, 'Now, this 23rd day of February, 1976, the Defendant, Robert Reno, has entered a plea of guilty to the lesser included offense of aggravated assault, Purdons Statu[t]e 2702–A4 only.'

THE COURT: Alright, thank-you. You are out on bail?

MR. RENO: That's right.

THE COURT: You will be notified when you appear for sentencing.

Guilty plea colloquy, February 23, 1976, at 1–2, 5–7.

Appellant Reno did not appear for sentencing on April 5, 1976, and was declared a fugitive. He was arrested as a result of a bench warrant issued by the Lawrence County Court in 1979. On June 29, 1979, Alfred V. Papa, Esquire filed a petition to withdraw as counsel which was joined in by Robert Reno. On June 29, 1979, an order was entered permitting the withdrawal of Papa as counsel and directing that the Lawrence County Public Defender's Office take over the further legal proceedings in the case.

On October 5, 1979, Robert Reno appeared before Judge Henderson represented by Norman A. Levine, Public De-

fender, for sentencing. The court reviewed with Reno his past criminal record and the following colloquy, *inter alia*, appeared:

THE COURT: Why didn't you appear in 1975 for sentencing when you were scheduled to come in and be sentenced?

MR. RENO: Because I was doing work for a man in Steubenville, Ohio. I was working up here at Papa's place. Al Papa this here and I got laid off. I was working for a guy, Charlie Pagalesi and his hotel burned out in Steubenville, Ohio and it was burned down and I was working down there and, to tell you the truth, it never even dawned on me about crossing from here to Ohio-Steubenville, Ohio, when I was working and then I got in this accident. I fell off a roof and I broke my spinal cord and sheared my spinal cord off and broke my back and I was in hospitals and nursing homes.

THE COURT: Ever since?

MR. RENO: Yes.

THE COURT: When did you do that?

MR. RENO: Five and a half years ago, just about, I think. I just came back from Johnstown Rehabilitation Center.

THE COURT: Did the hospital at the penitentiary send you to the rehabilitation center?

MR. RENO: No, I was there before I went there.

THE COURT: Well, we have a list here of your past record which, according to the list, at least, and I don't know whether it is complete or not, but you have been in and out of jail and the penitentiary since 1956 on both misdemeanor and felony charges. Is that right?

MR. RENO: I did time twice. I was at the workhouse. I did one to two years there and I did three to six years at Hunnington [*sic*].

THE COURT: Three to six years at Western Penitentiary?

MR. RENO: No, Hunnington [*sic*], Pa.

THE COURT: You were committed to Western Penitentiary and they sent you to Hunnington [*sic*]?

MR. RENO: Yes.

THE COURT: That was 1964?

MR. RENO: Yes, I think so.

THE COURT: '62—Lawrence County Jail, '61, the Lawrence County Jail, '61, the Lawrence County Jail, '61, the Lawrence County Jail. '56 you started at the Lawrence County Jail and then twice in the penitentiary. Is that right?

MR. RENO: Yes sir.

THE COURT: Well, Mr. Reno, it is the sentence of the Court that you pay the cost of prosecution; a fine of $1.00 and you undergo imprisonment in the State Penitentiary for a period of not less than two years or more than five years. I want you to understand that in determining what the sentence should be in this case, I consider the present charges against you; the fact that you did leave the jurisdiction and become a fugitive for several years; considering your past record and your own history and condition and personal history; considering the events of this case itself. I am considering everything that has been said here in Court today and I don't know whether I said your past record or not, but I am certainly considering your past record and I am also taking into consideration your physical condition. It is my opinion that, Mr. Reno, that if you are not committed to total incarceration, complete and total confinement, there is a serious danger of you becoming involved in further criminal activity as you have in the past. I think that anything other than total confinement would depreciate the seriousness of this crime. If you were placed on probation, I don't think there is any question but what your past record indicates that that wouldn't mean anything to you and you would continue to commit criminal activities. This is the minimum amount of confinement that I find is consist[e]nt with

the protection of the public and your own rehabilitative needs.

Sentencing transcript, October 5, 1979, at 4–8.

Thereafter, appellant filed a motion challenging the validity of the 1976 guilty plea and a motion for modification of sentence, both of which motions were denied by Order of Court dated December 20, 1979. In the interim a direct appeal was taken to this court from the judgment of sentence entered October 5, 1979.

I agree with that portion of the Opinion of Judge Henderson dated December 20, 1979, where he analyzes the facts and issues as follows:

At the colloquy preceeding [sic] acceptance of the plea, the Court explained the elements of the crime of aggravated assault to the Defendant. He indicated that he understood the charge and desired to plead guilty. Defendant was also informed of his rights, including his right to trial by jury, his right to confrontation, his privilege against self-incrimination and his presumption of innocence and was told that by pleading guilty he was waiving these rights. He again indicated his understanding and desire to plead guilty.

The defendant was informed that he would be required to appear for sentencing, and at that time would be sentenced under a statute calling for a maximum period of imprisonment of 5 years and a maximum fine of $10,000. Defendant understood and accepted this. He further indicated, as did the Assistant District Attorney, that there had been no other plea bargaining, promises, threats, coercion or force used to induce him into pleading guilty. Defendant also indicated that he was satisfied with the representation of trial counsel.

Due to the evidence produced at the trial held the previous week, it was clear that a factual basis for the plea was present and the plea was therefore accepted.

Although the recent case of *Commonwealth v. McCall*, 267 Pa.Super. 351, 406 A.2d 1077 (1979), indicates that a defendant who alleges his plea was unlawfully induced by

counsel's 'promise' of a lighter sentence is generally entitled to an evidentiary hearing even though he had stated at the colloquy that his plea was not so induced, we believe that decision applies only to cases where the record does not clearly refute the claim. See, *Commonwealth v. Strader,* 262 Pa.Super. 166, 396 A.2d 697 (1978).

In the case at bar, not only did Defendant deny any other promises, the Assistant District Attorney did also. In addition, the Defendant was specifically told that he would be sentenced and was told what the maxim[u]m terms of that sentence would be. It was not until after sentencing, over 3½ years later that Defendant first indicated any hesitancy. Even then, he did not state that either the Commonwealth or his attorney had said he would not be imprisoned. He stated only that he told his attorney he did not want to do any time. His statement further indicated that his plea was also based on financial considerations (even though he was aware that free, court-appointed counsel was available). [Sentencing transcript, October 5, 1979, at 11–13.]

Thus, the record clearly indicates not a promise of non-imprisonment, but rather an attempt on the part of the Defendant to test the waters by pleading guilty and then retracting his plea if he was sentenced to imprisonment. There is no indication of improper inducement and Defendant's plea was therefore properly accepted.

In imposing sentence, the Court considered the nature of the charges, Defendant's actions in failing to appear for sentencing and becoming a fugitive for several years, his past record, which included numerous offenses (both felonies and misdemeanors), as well as the Defendant's health, including the serious nature of his present injuries. It was and is our opinion that the present sentence is the minimum amount which is consist[e]nt with the protection of the public and the Defendant's rehabilitative needs.

Lower Ct. Op. at 2–4.

It is clear that when a defendant wishes, after the imposition of sentence, to withdraw his guilty plea, there must be a

showing of prejudice on the order of manifest injustice. *Commonwealth v. Robinson*, 253 Pa.Super. 496, 385 A.2d 448 (1978); *see also Commonwealth v. Hayes*, 462 Pa. 291, 300 n. 7, 341 A.2d 85, 90 n.7 (1975). I find under all the evidence and the record in this case that appellant has failed to prove that his plea was involuntary and that the lower court properly denied appellant relief.

Finally appellant raises a question concerning the sentence imposed and whether the lower court abused its discretion in sentencing. I find no abuse of discretion. What we said in *Commonwealth v. Zimmerman*, 282 Pa.Super. 286, 422 A.2d 1119 (1980) (Opinion by Judge Hoffman) is pertinent here.

> Appellant contends that his sentence was excessive and not sufficiently supported by a statement of reasons. We disagree. Appellant was sentenced to three-and-one-half-to-seven years imprisonment, fined $35,000.00, and charged costs for his four violations of the Controlled Substance, Drug, Device and Cosmetic Act. That sentence is within the limits established by the Act and we do not find it excessive. *Id.*, § 13(b)–(h), 35 P.S. § 780–113(b)–(h). In *Commonwealth v. Martin*, 466 Pa. 118, 133, 351 A.2d 650, 658 (1976), the Supreme Court stated that the individualized determination inherent in the sentencing process required, at the minimum, a consideration of the particular circumstances of the offense and the character of the defendant. *See also Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). In *Commonwealth v. Pauze*, 265 Pa.Super. 155, 158, 401 A.2d 848, 849 (1979), this Court noted that great deference is to be given to the trial court's discretion in sentencing, and that the reasons therefor must be set out in the record so that a determination can be made that discretion was, in fact, exercised.

*Id.*, 282 Pa.Superior Ct. at 298, 422 A.2d at 1125.

My review of the record reveals that the lower court complied with the mandates of *Martin* and *Riggins*. The sentencing colloquy amply shows that the lower court was aware of appellant's background information and gave long and deliberate consideration to the details.