**In re Bradford Clark TIMBERS District Justice In and For Magisterial District 31-2-03.**

**No. 3 JD 95.**

Court of Judicial Discipline of Pennsylvania.

Feb. 27, 1996.

Before McCLOSKEY, President Judge, and BURNS, CASSEBAUM, MAGARO and MESSA, JJ.

BURNS, Judge.

## DECISION

### Findings of Fact

1. District Justice Bradford Clark Timbers, the Respondent, is the duly elected district justice serving Magisterial District 31-2-03, which is located in Lehigh County, Pennsylvania, and is part of the Thirty-First Judicial District of Pennsylvania.

2. Magisterial District 31-2-03 encompasses the Township of Upper Milford and the Borough of Emmaus.

3. In Lehigh County, Night Court commences at 6:30 p.m. and ends at 2:30 a.m.

4. The Respondent was assigned to preside at Night Court on October 25, 1994.

5. Gail Weaknecht is a Lehigh County employee assigned to administrative and secretarial Night Court duties.

6. When the Respondent arrived at Night Court on October 25, he was required to conduct a preliminary arraignment.

7. On the night of October 25, the Respondent had:

(a) glassy, bloodshot eyes;

(b) slurred speech;

(c) a smell of alcohol about him;

(d) an unsteady walk; and

(e) a disheveled appearance.

8. The Respondent could not comprehend the instructions Ms. Weaknecht gave as to how to conduct a preliminary arraignment.

9. On October 25, Officer Dennis Magan of the Allentown Police Department brought a defendant, Chad Frankenfield, to Night Court to be arraigned for domestic abuse charges.

10. The Respondent, in attempting to conduct the arraignment:

(a) asked the defendant specific questions regarding the facts which gave rise to the defendant's arrest; and

(b) dismissed the charges against the defendant.

11. On October 25, the Respondent was visibly impaired by and under the influence of alcohol when he arrived at Night Court and continued to be impaired throughout the performance of his duties at Night Court.

12. District Justice Jepsen arrived at Night Court on October 25, to discuss an office matter with the Respondent.

13. The Respondent called District Justice Jepsen a "fat fucking bitch."

14. The police department sent Officers Troccola and Felton to Night Court on October 25, because of the Respondent's behavior.

15. The Respondent used threatening language towards Officer Troccola, saying he said he would "have his fucking job."

16. On the night of October 25, 1994, the Respondent answered a phone call from the Lehigh County on-call Assistant District Attorney, Steven Van Natten, by saying "Who the fuck are you?"

17. When Van Natten refused to provide his name, the Respondent stated "Fuck you" and hung up the phone.

18. On October 17, 1993, State Trooper Ashley Odoms issued a speeding ticket to Glennis Clark for allegedly driving an automobile at a speed of seventy-seven miles per hour in a fifty miles per hour speed zone.

19. The adjudication of the speeding violation was within the Respondent's magisterial jurisdiction.

20. Mr. Clark was a former Lehigh County District Attorney and a friend of the Respondent.

21. The Respondent recused himself from the summary matter arising from the issuance of the ticket.

22. In early or mid May 1994, following an unrelated hearing before the Respondent, Officer Odoms, at the Respondent's request, met privately with the Respondent in the Respondent's office.

23. During that meeting, the Respondent asked Officer Odoms if the officer could withdraw the summary speeding charges against Mr. Clark.

24. The Respondent told Officer Odoms that dropping the charges against Mr. Clark would be in the interests of justice because Mr. Clark was a former District Attorney.

25. Officer Odoms agreed to the Respondent's request to consider withdrawing the speeding ticket because the Respondent is a judicial officer.

26. Officer Odoms would not have agreed to withdraw a speeding citation if an ordinary citizen had made such a request.

27. Tammy Foster was employed by the County of Lehigh as a Clerical Technician assigned to the Respondent's magisterial district office, performing such duties as answering phones, filing, and scheduling hearings.

28. Some time during February or March, 1994, while the Respondent and Ms. Foster were in the Respondent's magisterial office, the Respondent slapped Ms. Foster on her buttocks, without her consent.

29. The Respondent's act caused Ms. Foster to feel offended and intimidated.

30. On April 26, 1994, the Respondent went to lunch at approximately 12:00 and returned from lunch at approximately 2:00.

31. When he returned from lunch, the Respondent had a flushed face, slurred speech, bloodshot eyes and smelled of alcohol.

32. The Respondent was visibly impaired by and under the influence of alcohol when he returned to work from lunch on April 26.

33. On April 26, shortly after the Respondent returned to the office from lunch, he was required to conduct a preliminary arraignment.

34. Because the Respondent was under the influence of alcohol, he left his office and returned to his home to shower and change before conducting the preliminary arraignment.

35. As a District Justice in Lehigh County, the Respondent was required to preside occasionally at Central Court.

36. On days when the Respondent presided at Central Court he regularly used the word "fuck" in the presence of co-workers and other non-court employees, including police officers and litigants, in open court.

37. The Honorable James N. Diefenderfer is the President Judge of the Thirty–First Judicial District.

38. Gordon Roberts, Lehigh County District Justice Administrator, informed President Judge Diefenderfer that the Respondent was consuming alcoholic beverages while in his District Justice offices.

39. On March 31, 1994, President Judge Diefenderfer issued a memorandum to the Respondent directing the Respondent that alcoholic beverages were not permitted upon, or to be consumed in, any of the district court offices, including his own office and weekend and Night Court locations.

40. After having received, read and acknowledged the memorandum, the Respondent continued to possess and consume alcohol within his district justice offices, in violation of President Judge Diefenderfer's order.

### Discussion

The Board has brought numerous charges against the Respondent. This Court's Conclusions of Law below indicate the nature and extent of the Respondent's misconduct. However, given the numerous charges brought against the Respondent by the Judicial Conduct Board, the Court feels it imperative to comment in general on certain aspects of the facts and charges leveled.

■ Initially, the Board's suggested findings of fact, and the testimony at trial indicate that the Respondent on at least two occasions was either late in arriving for his duties at Night Court or late in returning from lunch. The Court believes that isolated incidents of lateness in themselves usually do not give rise to sustainable charges of misconduct. Generally, a pattern of tardiness on the part of a judicial officer would be necessary in order to form the basis for the imposition of sanctions. Accordingly, the Respondent's tardiness could not form the basis

alone for our conclusions that he engaged in misconduct.

Additionally, we note that the Respondent's condition of being impaired by or under the influence of alcohol relates significantly to the heart of the charges in this case. As indicated by our specific conclusions of law, the pivotal issue in deciding whether misconduct has occurred with regard to the consumption of alcohol is whether the consumption has interfered with or impaired a judicial officer's ability to perform his duties or if the impairment brings disrepute upon the judiciary.

With regard to the issue of the Respondent's violation of the specific directive of President Judge Diefenderfer, we note that it is not this Court's function to opine on the propriety or lack of propriety of a judicial officer who possesses or consumes alcoholic beverages on court-related property. Our sole duty in this case is to review the Respondent's failure to comply with the directive of the President Judge of Lehigh County.

■ With regard to the Board's position on the incident involving the Respondent's attempt to seek favorable treatment for a friend in the speeding ticket incident, the Court notes that Rule 4D of the Rules for District Justices prohibits ex parte communication concerning a pending or impending matter. We conclude that the communication between the Respondent and Officer Odoms constitutes communication that is neither pending nor impending, and hence, that conduct could not constitute a violation of Rule 4D. An impending matter is one which has the possibility of coming before a judge or district justice, i.e., a matter involving charges that are being investigated or have been filed but not assigned to a particular judicial officer. A pending matter is one which is actually pending before a judicial officer. In this case, because the Respondent recused himself, the matter was neither pending nor impending.

Of course, although the Respondent did not violate Rule 4D by seeking favorable treatment for his friend, this incident nevertheless forms part of the basis for our conclusion the Respondent engaged in misconduct.

Finally, the Board has charged the Respondent with misconduct in office. The legislature, in drafting Article V, Section 18(d)(1), did not define the term misconduct in office. Courts formerly used the terms misbehavior and misconduct in office interchangeably, and used the common law definition of the term to determine whether a judicial officer had engaged in conduct which constituted misbehavior or misconduct in office. However, because the drafters used the term "misbehavior in office" in subsection 18(d)(3), the automatic forfeiture provision, and based on this Court's interpretation of the term *misbehavior* in office in accordance with the common law crime, in *In Re Gentile,* we here conclude that the legislature, in adopting the term *misconduct* in office must have meant conduct of a different nature than that defined by the common law definition of misbehavior in office.

Although the Court believes that the totality of the facts in the present case warrant the conclusion that the Respondent has engaged in misconduct in office, we are not inclined at this time to adopt a specific definition of this offense.

■ In summary, and as indicated below in our Conclusions of Law, we note that the Respondent has improperly used language that is inappropriate under the circumstances described in our factual findings, he has engaged in improper conduct with regard to a co-worker, he has failed to perform the duties of his office because he has attempted to work while being impaired by or under the influence of alcohol to a degree which prevented him from performing his official duties, he has improperly attempted to intercede in a judicial proceeding in order to seek favorable treatment for a friend, and he has improperly disobeyed the directive of his superior, the President Judge of Lehigh County.

### Conclusions of Law

1. The Judicial Conduct Board has authority under Article V, Section 18 of the Pennsylvania Constitution to file formal charges alleging ethical misconduct on the part of district justices, and to present the case in support of those charges before this Court.

2. This Court has jurisdiction over the subject matter of the Board's Complaint to Article V, Section 18(d)(2) of the Pennsylvania Constitution.

3. On the night of October 25, 1994, while presiding over Night Court, the Respondent was under the influence of alcohol to a degree which prevented him from properly performing his official duties, in violation of Rules 1, 2A, 4A and 4C of the Rules for District Justices and Pennsylvania Rule of Criminal Procedure No. 140.

4. The Respondent, by improperly contacting Officer Odoms, violated Rules 1 and 2A of the Rules for District Justices.

5. The Respondent, by (1) engaging in improper contact with a co-worker, (2) using foul language in the presence of co-workers and others having business before him, and (3) disobeying an order of the President Judge of Lehigh County, violated Rules 1, 2A and 4C of the Rules for District Justices.

6. The Respondent's conduct constitutes misconduct in office in violation of Article V, Section 18(d)(1) of the Pennsylvania Constitution.

7. The Respondent's conduct constitutes a failure or neglect to perform the duties of office.

8. The Respondent's conduct prejudiced the proper administration of justice.

9. The Respondent's conduct brought the judicial office into disrepute.

10. Pennsylvania Rule of Criminal Procedure No. 140 and the Rules for District Justices are rules prescribed by the Supreme Court.

11. The Respondent, by failing to comply with the Rules for District Justices, violated Article V, Section 17(b) of the Pennsylvania Constitution.

### ORDER

AND NOW, this 27th day of February, 1996, based on the above Conclusions of Law, it is hereby ORDERED:

1. That the Respondent, Bradford Clark Timbers, is subject to disciplinary sanctions under Section 18(d)(1) of Article V of the Pennsylvania Constitution.

2. Pursuant to C.J.D.R.P. No. 503, the attached Findings of Fact and Conclusions of Law are filed and shall be served on the Judicial Conduct Board and the Respondent.

3. Either party may file written Objections to the Court's Findings of Fact and Conclusions of Law within ten (10) days of the date of this Order. Said Objections shall include the basis therefore and shall be served on the opposing party.

4. If no exceptions are filed, upon expiration of the time period for filing Objections, this Court shall issue an Order setting a date for a hearing on the sanctions which will be imposed.

McGINLEY and DONOHUE, JJ., did not participate in the consideration or disposition of this decision.