In re Gloria M. STROCK, District Justice In and For Magisterial District 23–1–03.

No. 3 JD 98.

Court of Judicial Discipline of Pennsylvania.

Dec. 29, 1998.

Order Entering Judgment March 10, 1999.

Before McEWEN, President Judge,
MESSA, J., SYLVESTER, J., WEINBERG,
J., SWEENEY, J., PANELLA, J., and
BYER, J.

SYLVESTER, Judge.

## I.  *INTRODUCTORY SUMMARY*

The Judicial Conduct Board (Board) filed a Complaint with this Court against former District Justice Gloria M. Strock.  The Complaint consists of eight Counts based on allegations that Respondent repeatedly violated the Order of Forrest G. Schaeffer, President Judge of the 23rd Judicial District, dated November 21, 1994 by failing to deposit in a designated bank account, at the end of every day, all cash, checks and money orders received in the district justice office each day.  The Complaint contains allegations of general application which aver the failure to make deposits in violation of the Order of the President Judge, the commingling of a portion of the funds with personal funds, and the use thereof by Respondent to meet personal financial obligations (paragraphs 1–15 of the Complaint).  The Complaint then chronicles, day by day and month by month, from March, 1995 to September, 1996, the receipt of funds by her office, the delayed deposit in the designated bank account, and the apparent replenishment of the designated account by Respondent at the end of each month when she received her monthly salary check (paragraphs 16–111 of the Complaint).

The Board and the Respondent have submitted Stipulations of Fact in lieu of trial under C.J.D.R.P. No. 502(D)(1), and a waiver of trial, as well as Suggested Conclusions of Law in which the parties agreed that District Justice Strock is subject to discipline "on the basis of Counts 2, 3, 4, 5, 6 and 8."  A copy of the Stipulations is attached to this Opinion.

## II.  *FINDINGS OF FACT*

■  Based upon the Stipulations of Fact, this Court finds that Respondent is a former District Justice of Magisterial District No. 23–1–03 which is located in Berks County and encompasses Wards 8, 9, 11, and 12 of the City of Reading.  Respondent commenced her judicial service on December 7, 1992, and served until her resignation on June 8, 1998.[1]  Prior to her service as a

---

**1.** Though Respondent is no longer a judicial offi-    cer, this Court's jurisdiction over these disciplin-

district justice, the Respondent, who has formal training in accounting, was employed as a field auditor by the Office of the Auditor General of the Commonwealth of Pennsylvania. As part of her duties as district justice, the Respondent was responsible (1) for the management and fiscal administration of her office, Magisterial District 23–1–03, and (2) for the safe-keeping and timely deposit of funds received by Magisterial District No. 23–1–03.

At all relevant times, the District Justice Automated Office Clerical Procedures Manual, prepared by the Administrative Office of Pennsylvania Courts, provided in Section 5.11.7:

All money, including partial payments received by the district justice office (e.g., cash, checks, and money orders), must be deposited in the bank at the end of every day. A bank night depository may be used by all (night) courts as well as by any court that cannot get to the bank during banking hours. Money (receipts) should not be taken home or left in the office overnight or unattended. Daily Cash Balancing procedure must be done every day.

On or about November 21, 1994, Forrest G. Schaeffer, President Judge of the 23rd Judicial District, issued a Court Order which provided in pertinent part:

1) *Daily Deposits*

All cash, checks and money orders received in the district justice office must be deposited in the appropriate checking account at the end of every day. Monies shall not be left in the office overnight. (See District Justice Automated Office Clerical Procedures Manual, Section 5.11.7).

2) *Official Receipts*

An official receipt must be issued promptly to the payer upon receipt of payment for all monies received in the district justice office, except that a receipt shall not be mailed to the payer when payment is received by check or money order through the mail.

Based upon the Stipulations, this Court finds that from March 1, 1995 through October 1, 1996, Respondent would take her office's daily receipts of checks and cash home to her residence. She would use the cash for her personal purposes, until she received her monthly salary deposit. When Respondent received her monthly salary deposit, she would write a personal check to "cash", use the proceeds to replenish the cash she had taken for her personal use, and then deposit the checks and cash to her office's account. Thus, Respondent in effect was both delaying the making of deposits and issuing to herself loans from funds which belonged to the Commonwealth. The scheme was uncovered when Respondent was audited in mid-month, before she was able to replenish cash from her monthly salary deposit.

Based upon the Stipulations, this Court further finds that due to her training in accounting and her position as a district justice, the Respondent knew, or reasonably should have known, that her failure to make full and timely deposits was improper and that her commingling of personal and public funds and her use of public funds to pay personal financial obligations was improper.

### III. DISCUSSION

The Board has charged that the conduct of Respondent set out in the Complaint subjects her to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution because that conduct constitutes:

1. misconduct in office (Count 1),

2. such that brings the judicial office into disrepute (Count 2),

3. neglect or failure to perform the duties of office (Count 3),

4. a violation of Rule 1 of the Rules Governing Standards of Conduct of District Justices (Count 4),

---

ary proceedings continues. See, *Matter of Glancey,* 518 Pa. 276, 542 A.2d 1350 (1988) and *J.I.R.B. v. Snyder,* 514 Pa. 142, 523 A.2d 294 (1987). In the latter case the Supreme Court held that "... this tribunal continues to have jurisdiction in spite of any intervening acts which result in a judge leaving office." *Snyder,* 514 Pa. at 159, 523 A.2d at 302 (Papadakos, J., dissenting on other grounds). See also the opinions of this Court in *In re Cicchetti,* 697 A.2d 297, 301 n. 1 (Pa.Ct.Jud.Disc.1997) and *In re Chesna,* 659 A.2d 1091 (Pa.Ct.Jud.Disc.1995).

5. a violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices (Count 5),

6. a violation of Rule 5A of the Rules Governing Standards of Conduct of District Justices (Count 6),

7. a violation of Rule 13 of the Rules Governing Standards of Conduct of District Justices (Count 7), and

8. a violation of Article V, § 17(b) of the Pennsylvania Constitution by virtue of her alleged violation of Rules 1, 2A, 5A and 13 of the Rules Governing Standards of Conduct of District Justices.

■■■ The Board and the Respondent have submitted "Suggested Conclusions Of Law Submitted Pursuant To C.J.D.R.P. No. 502(E)." [2] A review of this filing indicates that the Board has agreed with Respondent not to proceed on Counts 1 (misconduct in office) and 7 (a violation of Rule 13 of the Rules Governing Standards of Conduct of District Justices).[3] While this procedure may be expeditious, and the maintenance of procedural integrity may be viewed as of negligible importance in a given case, it does contravene C.J.D.R.P. No. 502(F) which requires the Board, in any case where it wishes to withdraw formal charges which have been made in a Complaint, to seek the permission of this Court to do so, and to support its request with good reasons.[4]

Having said that, we will accept the parties' "Suggested Conclusions" as an implied request by the Board to withdraw Counts 1 and 7 and will permit the withdrawal of those Counts in this case, but direct the Board to follow Rule 502(F) in any future case where the Board may wish to withdraw formal charges made in a Complaint.

We move then to consider Counts 2, 3, 4, 5, 6 and 8 which we will address in that order.

*Count 2.* Conduct which brings the judicial office into disrepute.

The Pennsylvania Constitution, at Article V, § 18(d)(1), provides that a judicial officer whose conduct brings the judicial office into disrepute is subject to discipline imposed by this Court.

This Court has had occasion to consider conduct which the Board has charged as being such conduct as has brought the judicial office into disrepute.

In *In re Smith,* 687 A.2d 1229 (Pa.Ct.Jud. Disc.1996), this Court noted that the conduct of a judge which results in diminishment of the public esteem for that judge, may not support the conclusion that the conduct has brought the judiciary as a whole into disrepute, absent a persuasive showing by the Board that the conduct is so extreme as to have brought the judicial office itself into disrepute. In *In re Cicchetti,* 697 A.2d 297, 310 (Pa.Ct.Jud.Disc.1997), this Court reiterated that notion as it concluded that a judge's conduct in making persistent sexual advances towards a subordinate employee, who repeatedly rejected the advances, constituted conduct of such an extreme nature that the judicial officer had brought the judicial office itself into disrepute.

In *In re Trkula,* 699 A.2d 3 (Pa.Ct.Jud. Disc.1997), we held that an overt, *ex parte* attempt by a judicial officer to influence the outcome of a case on appeal from his or her court was a subversion of the appellate process and would "assuredly dash public confidence in [the adjudicatory system] and in the judicial office itself," *Id.,* at 8. See also *In re*

2. It appears to us that Rule 502(E) was not intended to apply to a stipulated case, such as this, but, by virtue of the context in which it appears and, indeed, its language, its application is intended only for those cases where a trial takes place and the facts remain in controversy. C.J.D.R.P. No. 502(E) provides:

At the close of the evidence, the parties may submit suggested Conclusions of Law which the Court may consider in rendering the decision, however, said conclusions when submitted are not binding upon the Court.

3. We do not regard the use of this procedure as conveying any suggestion by either the Board or the Respondent that this Court is bound to adopt the "Suggested Conclusions"—which, of course, it is not.

4. C.J.D.R.P. No. 502(F) provides:

The Board may file a motion to withdraw counts in a Complaint, which shall be supported by a change in circumstances such as the loss of evidence or the unavailability of a necessary witness, or other justifiable reason.

*Joyce,* 712 A.2d 834, 844 (Pa.Ct.Jud.Disc. 1998).

In *Cicchetti,* 697 A.2d at 312, this Court noted that:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

██ In this case the stipulated facts establish that from March 1, 1995 through September, 1996—a period of eighteen months—Respondent consistently and deliberately failed to deposit the monies received in her district justice office into the appropriate district justice bank account at the end of every day, as she was required to do by the District Justice Automated Office Clerical Procedures Manual, promulgated by the Administrative Office of Pennsylvania Courts, as well as by the Order of the President Judge of the 23rd Judicial District.

In this case the stipulated facts establish that, instead of depositing these funds in the district justice office account, Respondent commingled these public funds with her personal funds and used them to meet her personal financial obligations.

The stipulated facts establish that Respondent had the use of these funds in varying amounts for varying periods of time each month until the end of each month when she would "pay back" or replenish the office bank account.

It would appear that Respondent's management of this arrangement was facilitated by her training in accounting and by her experience as a field auditor for the Office of the Auditor General of the Commonwealth of Pennsylvania.

It also appears that, when an audit was conducted just before the end of September, 1996 by the Office of the County Controller of Berks County, her district justice office account was found to be $2,710.96 "short."

In *Smith,* 687 A.2d at 1239 we said that:

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

We believe that the reasonable expectations of the public would include the expectation that a judicial officer will follow the orders of her President Judge, not violate them, and would include the expectations that a judicial officer, will not help herself to the public monies that come to her office and use them as her own in an ongoing scheme, secret even from her own employees.

We hold that the conduct of Respondent was so extreme as to bring the judicial office into disrepute.

*Count 3.* Conduct which constitutes a neglect or failure to perform the duties of office.

Article V, § 18(d)(1) of the Pennsylvania Constitution also makes a judicial officer who neglects or fails to perform the duties of office subject to discipline imposed by this Court.

██ We hold that the conduct with which this Respondent is charged was not intended to be, and is not, covered by this constitutional phrase.

The operative words are "neglect" and "failure." As pertinent here, "neglect" means: "To fail to do or carry out through carelessness or oversight." The American Heritage Dictionary of the English Language, Houghton Mifflin Company, 1981 Ed. This does not describe the conduct of this Respondent, and, although we recognize that a broader meaning can be ascribed to the word "failure", as one can "fail to do or carry out" by intention as well as by neglect, we believe that these words were placed together in the Constitution with the intention that they be read in *pari materia,* thus we decline to assign the broader meaning to the word "failure" in this constitutional context. Furthermore, there is no call for us to find that the conduct of this Respondent described in the Stipulations violates this particular phrase of the Constitution, inasmuch as this conduct is proscribed by other provisions of the Constitution and of the Code of Judicial Conduct.

On three previous occasions, the Judicial Conduct Board has charged Respondents with "neglect or failure to perform the duties of office" [5] and in all three cases this Court found the conduct fit the charge. However, in those cases the conduct at issue was genuinely neglectful: in *Smith* and *Fischer,* delay in rendering decisions; in *Timbers,* impairment from alcohol consumption prevented performance of the duties of office. The systematic and deliberate use of public funds by this Respondent is conduct of a distinctly different character and it would be incongruous to treat it as resting in the shade of the same tree under which the conduct of *Smith, Timbers* and *Fischer* is found. Therefore, we find that the conduct of the Respondent does not constitute "a neglect or failure to perform the duties of office." [6]

*Counts 4 and 5.* Violation of Rules 1 and 2A of the Rules Governing Standards Conduct of District Justices.

Rule 1 of the Rules Governing Conduct of District Justices provides:

An independent and honorable judiciary is indispensable to justice. A district justice should participate in establishing, maintaining and enforcing, and shall himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions for these rules governing standards of conduct of district justices shall be construed and applied to further that objective.

Rule 2A of the Rules Governing Standards of Conduct of District Justices provides:

A district justice shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. A district justice shall not allow his family, social or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interest of others, nor shall he convey or permit others to convey the impression that they are in a special position to influence him.

These Rules are the identical twins of Canons 1 and 2 of the Code of Judicial Conduct—except for insignificant differences, they are verbatim.

We have had occasion to consider the applicability of these Canons and these Rules in several cases:

In *Cicchetti,* we considered the applicability of Canons 1 and 2A to sexual harassment of a court employee and filing false affidavits to Campaign Expense Reports.

In *Smith,* we considered the applicability of Canon 1 to delay in disposing of cases.

In *Walters,* we considered the applicability of Rules 1 and 2A to operating a motor vehicle while under the influence of alcohol, Section 3731(a)(4) of the Motor Vehicle Code, 75 Pa.C.S. § 3731(a)(4).

In *Trkula,* we considered the applicability of Rules 1 and 2A to the attempt by a district justice to influence the outcome of a case before another judge.

---

**5.** *In re Fischer,* 657 A.2d 535 (Pa.Ct.Jud.Disc. 1995); *In re Timbers,* 674 A.2d 1217 (Pa.Ct.Jud. Disc.1996); *In re Smith,* 687 A.2d 1229 (Pa.Ct. Jud.Disc.1996).

**6.** Our respected brother dissents from this conclusion and observes that: "If the majority is holding that the making of prompt, proper disposition of public funds is not a duty of judicial office, or that the failure to make prompt, proper disposition of public funds is not a failure to perform a duty of judicial office, then I fear the precedent we are creating not only is erroneous but dangerous." We are constrained to note: 1. We do not hold that the prompt, proper disposition of public funds is not a duty of public office. In fact, we have explicitly stated the opposite: "Respondent consistently and deliberately failed to deposit the monies received in her district

justice office into the appropriate district justice bank account at the end of every day, as she was required to do ...," *supra,* at 657, and it is implicit in our holding that Respondent's conduct was a violation of Canon 5A and was such that brought the judicial office into disrepute. 2. Our conclusion that the Respondent's conduct does not constitute "neglect or failure to perform the duties of office" is based on the view that this constitutional clause was directed at negligent conduct and not at deliberate conduct. 3. We recognize that it is always possible that any holding of this Court—including this one—may be held to be "erroneous"; but, inasmuch as deliberate conduct such as engaged in here is proscribed by other provisions of the Constitution and of the Code of Judicial Conduct, our holding is hardly "dangerous."

We adopt and reaffirm what we said regarding Rule 1, in *Trkula*, the most recent of these cases, namely:

> In the past we have dealt with charges of violations of Canon 1 of the Code of Judicial Conduct, which is identical to Rule 1, in a manner consistent with the holding of the Supreme Court of Pennsylvania in *In the Matter of Larsen*, Appendix 1, 532 Pa. 326, 616 A.2d 529 (1992). We intend to continue to follow that holding which was expressed as follows at 532 Pa. at 385, 616 A.2d at 558.
>
>> Canon 1 is primarily a statement of purpose and rule of construction, rather than a separate rule of conduct. It requires that each of the other Canons be construed in accordance with the Code's fundamental purpose of ensuring both the independence and the integrity of the judiciary.
>
> We recognized this interpretation of Canon 1 in *Smith, supra,* at 1239 and most recently in *In re Cicchetti,* 697 A.2d at 313, for we stated:
>
>> The language in Canon 1 is hortative and goal oriented, and does not set forth with specificity the precise nature of the conduct and standards to which it is aimed.

699 A.2d at 8–9.

In *Walters* we followed the holdings of the Supreme Court in *Larsen*, and of this Court in *Smith* and *Cicchetti* and found that operation of a motor vehicle under the influence of alcohol was not within the purview of Rules 1 or 2A.

■ We state, once again, our intention to follow the holding of the Supreme Court in *Larsen*, as well as those of this Court in *Smith, Cicchetti,* and *Walters*. Consequently, we hold that the conduct of Respondent did not violate Rule 1 of the Rules Governing Standards of Conduct of District Justices.

Likewise, we adopt and reaffirm what we said regarding Canon 2 and Rule 2A in *Smith, Cicchetti,* and *Walters*.

In *Smith* we said:

> Canon 2 in general is directed towards conduct which could potentially cause the public or litigants to believe that a judge is not acting impartially.

687 A.2d at 1240.

> In *Cicchetti* we stated:
>
> "Integrity" must be read *in pari materia* with … "impartiality" in Canon 2. Both of those words and both of these Canons [Canons 1 and 2] exhort judges to carefully preserve all appearance of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influence.

697 A.2d at 313.

Moreover, the language of Rule 2A itself provides support for this interpretation of the rule:

> A district justice shall not allow his family, social or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interest of others, nor shall he convey or permit others to convey the impression that they are in a special position to influence him.

■ Thus, we hold that the conduct of this Respondent is not within the compass of Rule 2A of the Rules Governing Standards of Conduct of District Justices.

*Count 6.* Violation of Rule 5A of the Rules Governing Standards of Conduct of District Justices.

Rule 5A of the Rules Governing Standards of Conduct of District Justices provides:

> A district justice shall diligently discharge his administrative responsibilities, maintain competence in judicial administration and facilitate the performance of the administrative responsibilities of his staff and of other members of the judiciary and court officials.

Examination of this rule and its application to the conduct of this Respondent, as described in the Board's Complaint and in the Stipulations, admits of only the briefest discussion.

■ Management of the fiscal affairs of the office of district justice is an administrative responsibility of that office. Respon-

dent's arrant appropriation for her personal use of the public funds paid to her office represents the antithesis of the injunction of Rule 5A which binds a district justice to "diligently discharge his administrative responsibilities."

We conclude that the conduct of Respondent constitutes a violation of Rule 5A of the Rules Governing Standards of Conduct of District Justices.

*Count 8.* Violation of Article V, § 17(b) of the Pennsylvania Constitution by engaging in conduct violative of legal or judicial ethics prescribed by the Pennsylvania Supreme Court, to wit, Rules 1, 2A, 5A and 13 of the Rules Governing Standards of Conduct of District Justices.

Section 17(b) of Article V of the Pennsylvania Constitution provides:

> Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

Inasmuch as we find no violation of Rules 1 and 2A of the Rules Governing Standards of Conduct of District Justices, and inasmuch as Count 7, charging violation of Rule 13, has been withdrawn, those Rules are not implicated in our consideration of this Count.

■ On the other hand, we have found that the conduct of the Respondent does constitute a violation of Rule 5A, and, therefore, for the reasons set out in our opinion in *Joyce,* 712 A.2d at 845 (Pa.Ct.Jud.Disc.1998), we hold that Respondent's conduct is an automatic, derivative violation of Article V, § 17(b) of the Constitution.

We take the time now to address some fundamental points raised by our respected colleague in his concurring and dissenting opinion. In that opinion, Judge Byer expresses the view that it is error for this Court to "render precedential opinions [such as this] except where we have had the benefit of advocacy on both sides of the questions by litigants possessing a true adversity and interest in the outcome..." and "[he] would simply enter an order determining that based upon the stipulated facts and Respondent's concession, Respondent is subject to discipline under the Board's complaint...." [7]

While we, like Judge Byer and Professor Keeton, would prefer to have the benefit of adversary arguments, we note:

■ 1. We do not believe that this Court should accept and adopt as its own, without examination, stipulations that specified facts (a) support whatever charges the Board and any given respondent stipulate they support, and (b) justify this Court's entering Conclusions of Law that a respondent is subject to discipline for violation of specified constitutional and ethical precepts simply because a given respondent so concedes.

We believe it would be wrong to find that "Respondent is subject to discipline under the Board's complaint" [8] on any count which the facts do not support. We believe this Court's obligation to make an independent examination of the facts to determine if they support the charges which a respondent concedes they support is no less than the obligation of a trial court receiving a guilty plea in a criminal case "to satisfy itself that there is a factual basis for the plea of guilt." *Commonwealth v. Nelson,* 455 Pa. 461, 463, 317 A.2d 228, 229 (1974), and "to determine... whether the facts acknowledged by the defendant constitute the prohibited offense." *Commonwealth v. Anthony,* 504 Pa. 551, 558, 475 A.2d 1303, 1307 (1984), see also *Commonwealth v. Rosario,* 418 Pa.Super. 196, 613 A.2d 1244 (1992), *aff'd,* 545 Pa. 4, 679 A.2d 756 (1996), *Commonwealth v. Reno,* 303 Pa.Super. 166, 449 A.2d 630 (1982). We reiterate what we said in *In re Timbers,* 668 A.2d 304, 305 (Pa.Ct.Jud.Disc.1995):

> Furthermore, part of this Court's necessary function is to develop a body of law that will provide judicial officers with some guidance as to the conduct which may form the basis for the imposition of sanctions.

---

**7.** See Byer, J., concurring and dissenting at 662 and 663.

**8.** See Byer, J., concurring and dissenting at 663.

In order to develop such a body of law, the Court, rather than parties (through binding stipulated agreements), must determine whether the facts support proposed conclusions.

Since, for the reasons set out *supra*, we do not believe the facts support the charges contained in Counts 3, 4, and 5, we do not believe we should enter an order stating that they do, as suggested in the concurring and dissenting opinion. We are especially undisposed to do so with respect to Counts 4 and 5 for any indication that the facts here stipulated support those charges would be in direct conflict with previous decisions of this Court [9] and of the Supreme Court.[10] Moreover, in our view, such action would be a step backward in this Court's effort to identify, for the benefit of those subject to its jurisdiction as well as for the Judicial Conduct Board, the conduct which is—and which is not—proscribed by the various constitutional provisions and canons of ethics.

■ 2. It is the constitutional obligation of this Court to file findings of fact and conclusions of law with respect to the charges brought by the Board [11] and this obligation is without reference to whether the parties have briefed any question or whether the facts (stipulated or not) constitute the violation charged (conceded or not).

It is the observation of this Court that judicial officers who admit that they did that with which they are charged, do not then engage in debate with the Judicial Conduct Board on the subject of which canons or constitutional provisions their conduct has violated. Quite the opposite: such judicial officers wish to "cooperate" with the Board and do not wish to argue with the Board over legal niceties.

Furthermore, it is the experience of this Court that, even in contested cases, the parties do not always address every count in their briefs [12] yet the obligation of this Court to render conclusions as to those counts is not thereby suspended—nor has there been any suggestion that these decisions, rendered without the benefit of briefings, be nonprecedential. Moreover, if the Board or the Respondent is not satisfied with this Court's Conclusions of Law, either may file Objections under C.J.D.R.P. No. 503(B).[13]

3. Finally, we fail to see how our colleague's proposal "[to] simply enter an order determining that based upon the stipulated facts and Respondent's conclusion, Respondent is subject to discipline under the Board's complaint" makes such an order nonprecedential. We fail to see how such an order does not provide future litigants, including the Judicial Conduct Board, with support for whatever position, in a future case, they might believe it supports [14]—unless, of course, we specifically provide that the order shall not be regarded as precedent, and shall not be cited.

This is a course which has been adopted by the Superior and Commonwealth Courts where decisions can be designated "Memorandum Opinions" which are not to be published and are not to be regarded as prece-

---

9. See, e.g., *In re Trkula*, 699 A.2d 3 (Pa.Ct.Jud. Disc.1997); *In re Walters*, 697 A.2d 320 (Pa.Ct. Jud.Disc.1997); *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997); and *In re Smith*, 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996).

10. See, *In the Matter of Larsen*, Appendix 1, 532 Pa. 326, 616 A.2d 529 (1992).

11. Pa. Const., Art. V, § 18(b)(5).

12. See,. e.g., *In re Cicchetti*, 697 A.2d 297 (Pa.Ct. Jud.Disc.1997) where the Board's Complaint contained 25 counts and only a few of the counts were addressed by the parties in their briefs.

13. C.J.D.R.P. No. 503(B) provides:
(1) The Board and the Judicial Officer may elect to file written objections which shall include the basis for the objections to the Court's findings and conclusions.
(2) Any objections shall be filed with the Court within 10 days of the entry of the findings and conclusions. A copy of the objections shall be served upon the opposing party. The President Judge may for cause shown extend the time for filing objections.
(3) The Court may permit the Judicial Officer and the Board to present oral argument on any objections filed.

14. As stated earlier, the conclusions suggested by our colleague are at variance with decisions of the Supreme Court and of this Court. See footnotes 4 and 5, *supra*.

dential.[15] We have concern that, while such a policy may be expeditious for the Superior and Commonwealth Courts, it may be injudicious for the Court of Judicial Discipline.

A major accomplishment of the constitutional amendments restructuring the judicial discipline system and establishing this Court was seen to be the opening up of the process to the public, and so we believe that it would be unwise and imprudent for this Court to issue any unpublished opinions. In any event, any limitations on the publication of the actions of this Court should be effected only after careful consideration by the full court.

## IV. CONCLUSIONS OF LAW

1. The Respondent's appropriation of the public funds of her district justice office and using them as her own is such conduct:

   a. as brings the judicial office into disrepute,

   b. as constitutes a violation of Rule 5A of the Rules Governing Standards of Conduct of District Justices, and

   c. as constitutes a violation of Article V, § 17(b) of the Pennsylvania Constitution by virtue of her violation of Rule 5A of the Rules Governing Standards of Conduct of District Justices.

2. The Respondent's conduct does not constitute:

   a. neglect or failure to perform the duties of office,

   b. a violation of Rule 1 of the Rules Governing Standards of Conduct of District Justices, and

   c. a violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices.

3. The Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

BYER, J., files a concurring and dissenting opinion.

RUSSO, J., did not participate in the consideration or disposition of this case.

BYER, Judge, concurring and dissenting.

Some important points of disagreement with my esteemed colleagues in the majority compel me to write separately. I concur in most of the majority's result (i.e. the determination that Respondent is subject to discipline on various bases charged by the Board), but dissent in part.[1]

The majority opinion decides a number of legal questions. The opinion does so in a manner which is precedential, in that the opinion will serve as binding authority in future cases before this court and perhaps as persuasive authority in other tribunals or jurisdictions.

However, we have not received briefs or oral argument on any of these legal questions. Instead, all we have before us is a stipulation in which the Board and Respondent agree to the facts and Respondent concedes that she is subject to discipline under each of the counts in the Board's complaint. The majority, on its own, has performed the legal research, analyzed the facts and the law, applied the law to the facts and made its own legal conclusions without hearing from the parties.

As an unabashed fan of our common law tradition[2], I cannot agree with the majori-

---

15. The Superior Court and the Commonwealth Court have formally adopted this policy as part of the Internal Operating Procedures of those Courts. See, Commonwealth Court IOP § 414, Superior Court IOP § 65.37A.

1. I cannot join the majority's expression of the basis for our continuing jurisdiction over this Respondent. The majority's statement (Maj. Op. 654-655, n. 1), "[t]hough Respondent is no longer a judicial officer, this Court's jurisdiction over these disciplinary proceedings continues" is overbroad. The only reason we continue to have jurisdiction over this Respondent, notwithstand-

ing her resignation from office, is that we still have to decide whether to impose a sanction precluding Respondent from holding judicial office in the future, in accordance with Article V, § 18(d)(3) of the Pennsylvania Constitution. Therefore, Respondent's resignation from office does not render the case moot, because we still have the power to impose a further sanction. See In re Larsen, 717 A.2d 39, 49-50 (Pa.Ct.Jud. Disc.1998) (Byer, J., concurring).

2. See generally, Ruggero J. Aldisert, The Judicial Process, 180-186 (2d ed.1996).

ty's creating precedent by such a process. We should not render precedential opinions except where we have had the benefit of advocacy on both sides of the questions by litigants possessing a true adversity and interest in the outcome. That was one of the bases for my dissenting opinion in *In re Michael Smith,* 712 A.2d 849, 855 (Pa.Ct. Jud.Disc.1998) (Byer, J., dissenting) [3], and is the basis for how I would approach this case.

There is an important role for opposing parties and their lawyers in the creation of precedent.[4] We err when we usurp that role and create precedent in the absence of legal arguments by adverse parties.

The majority's error in creating precedent without an adversary proceeding is apparent from the majority's conclusion that Respondent's conduct does not constitute "neglect or failure to perform the duties of office" under Pennsylvania Constitution Article V, § 18(d)(1). The majority reaches this conclusion even though Respondent has conceded that she is subject to discipline on this basis and without providing the Board with the opportunity to present argument in support of its charge.

Just as I cannot subscribe to the procedure, I must dissent from the conclusion. By any reasonable construction of the language of the Constitution,[5] Respondent's failure to make a prompt deposit into the required depository of public funds which came into her possession as a judicial officer was a neglect or failure to perform the duties of judicial office. If the majority is holding that the making of prompt, proper disposition of public funds is not a duty of judicial office, or that the failure to make prompt, proper disposition of public funds is not a failure to perform a duty of judicial office, then I fear the precedent we are creating not only is erroneous but dangerous.

I would not decide this question, nor any of the other questions addressed in the majority opinion, in a precedential manner. Instead, I would simply enter an order determining that based upon the stipulated facts and Respondent's concession, Respondent is subject to discipline under the Board's complaint, and leave the creation of precedent on the interpretation of Constitutional and ethical requirements to future cases in which the parties truly are adverse and have the opportunity to present us with their informed and persuasive positions.

## ORDER

PER CURIAM.

AND NOW, this 10th day of March, 1999, the Findings of Fact and Conclusions of Law set forth in this Court's Opinion dated December 29, 1998 having become final pursuant to C.J.D.R.P. No. 503, and after the hearing held by the full Court on March 1, 1999 on the issue of sanctions, IT IS HEREBY ORDERED that:

**3.** In my dissenting opinion in *In re Michael Smith,* I wrote that by permitting a respondent to defend an action in our court by making a collateral attack on the substantive validity of a pending criminal charge, "we unfairly place the Board in the position of having to argue the substantive issue of criminal law even though the Board does not represent the Commonwealth in the criminal case. Moreover, by deciding the substantive criminal law issue in the absence of counsel for the Commonwealth in the criminal case, we deprive ourselves of the ability to decide the issue ... in the context of the arguments made by the Commonwealth ...." 712 A.2d at 856.

**4.** Judge and Professor Robert E. Keeton pertinently wrote, "I write not lightly or in jest but quite seriously when I say that I would prefer not to try to answer these debatable issues about interpretation of the words [of a statute] without first having the benefit of adversary arguments by professional advocates representing the parties in a live case or controversy ...." Robert E. Keeton, *Judging,* 163 (1990). This goes to the heart of the common law tradition. As Judge Aldisert teaches, "[a]nother important characteristic of the common law tradition is that it is law fashioned by lawyers and judges from actual events that have raised issues for decision. It is law that emerges as a bi-product of the major function of the courts—dispute settling, the adjustment of a specific conflict among the parties". Aldisert, *The Judicial Process, supra* n. 2 at 185.

**5.** *See In re Jeffrey A. Smith,* 687 A.2d 1229 (Pa.Ct. Jud.Disc.1996).

Respondent, Gloria M. Strock, is hereby removed from office and shall be ineligible to hold judicial office in the future.

BYER, J., concurs in the result.

RUSSO, J., did not participate in the consideration or disposition of this case.