**In re Robert S. CHESNA, Former District Justice for Magisterial District 11–2–03.**

Court of Judicial Discipline of Pennsylvania.

March 14, 1995.

Order March 28, 1995.

Order May 25, 1995.

Before McCLOSKEY, President Judge, and BURNS, DePAUL, McGINLEY, DONOHUE, CASSEBAUM, JOHNSON and MAGARO, JJ.

### BACKGROUND

The Judicial Conduct Board commenced this matter on September 30, 1994 by filing a formal complaint in this Court pursuant to Article V, Section 18(a)(7) and 18(b)(5). The complaint consisted of six counts, alleging that respondent Robert S. Chesna engaged in conduct sanctionable by this Court. Pursuant to the Interim Rules of Procedure Governing the Court of Judicial Discipline then in effect, respondent was served with the complaint and notified that procedure would be governed by the Interim Rules of Procedure Governing the Court of Judicial Discipline then in effect. Interim Rule 20(A)(1) stated that "[a]ll motions, challenges, and applications or requests for an order or relief on behalf of the Judicial Officer shall be consolidated in one written motion" which "shall be filed no later than 30 days from the filing of the Board Complaint. . . ." Interim Rule 20(A)(5) further stated that "[t]he failure, in any motion, to request a type of relief or order, or to state a ground therefore, may constitute a waiver of such relief, order, or ground."

Respondent did not file a timely Omnibus Motion nor did he respond in any way prior to appearing, with counsel, at the pre-trial hearing held by the Conference Judge on December 15, 1994. Following the pre-trial conference, the pre-trial order of the Confer-

ence Judge ordered respondent to submit a pre-trial memorandum by January 10, 1995. Respondent did not submit a memorandum at any time prior to trial. Trial was held on January 24, 1995. After the Judicial Conduct Board had rested its case, respondent, who resigned from his office as a district justice on or about January 22, 1992, demurred and raised, for the first time, the question of whether this Court has jurisdiction over former judicial officers for conduct committed during their term of office.

Rather than determine at this time whether respondent waived his right to raise jurisdictional issues before this Court, in the interest of justice we shall treat the matter as properly raised but find that we can readily dispose of it. Our Supreme Court has held on numerous occasions that resignation from or loss of election to judicial office do not affect jurisdiction over disciplinary matters where the conduct complained of occurred during the judicial officer's tenure in office. *In re Snyder*, 514 Pa. 142, 523 A.2d 294 (1987) *cert. denied sub. nom., Snyder v. J.I.R.B.*, 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 61 (1987) (judge lost retention election); *In Re Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988) (judge resigned during proceedings with written promise to never seek judicial office again); *In Re Cain*, 527 Pa. 260, 590 A.2d 291 (1991) (retired judge who was administratively removed from senior judge status was still subject to disciplinary action). Although these cases were decided under the prior version of Article V, Section 18, this Court has previously stated that it would consider such case law as persuasive authority. *In re Justice Rolf Larsen*, 655 A.2d 239, 247, n. 9 (1994). We find no indication that the 1993 amendment was intended to change the conclusions of cases holding that former judicial officers remain subject to disciplinary action for conduct committed during their tenure in office.

Chesna, however, argues that while sanctions in the above-cited cases were *imposed* after the judicial officer's tenure in office had ended, they are distinguishable from the present case in that the former Judicial Inquiry and Review Board (J.I.R.B.) had recommended action while the judicial officer

remained in office. Chesna notes that he was not even informed of a J.I.R.B. investigation until June of 1993, some 18 months after leaving office. Put differently, Chesna argues that *Snyder* and its progeny are limited to cases in which disciplinary action is commenced during a judicial officer's actual tenure in office and merely provides for a continuation of such jurisdiction. We agree that this case is factually distinguishable, but cannot conclude that this distinction affects the jurisdiction of this Court.

In its holding in *Snyder*, Chief Justice Nix, writing for a majority of our Supreme Court, noted that

> [T]he people have entrusted to this Court the task of finally determining whether a judge should be disciplined, and, if so, the extent of that discipline and its consequences. Those consequences are not necessarily restricted to the term for which the judge has been elected or retained when he engages in improprieties which require discipline.

*Snyder*, 514 Pa. at 152–53, 523 A.2d at 299.

In adopting the 1993 amendment, the people have constitutionally transferred that task to this Court. Although charges were not brought until well after Chesna left office, a conclusion that this Court lacked jurisdiction to impose an appropriate sanction would result in exactly the same type of evil sought to be avoided by the rationale of *Snyder* and its progeny, i.e., avoidance of discipline by resignation prior to charges being brought. In *Disciplinary Counsel v. Anonymous Atty.*, 528 Pa. 83, 94, 595 A.2d 42, 47 (1991), our Supreme Court held that

> [The former] JIRB's authority to investigate allegations of misconduct concerning members of the judiciary is not restricted to conduct of a judge in his official capacity. Nor is JIRB's jurisdiction limited *by the status of the judicial officer at the time the misconduct occurred or at the time the investigation into is has culminated.*

(emphasis added).

 It is not of record before this Court at what point in time the former J.I.R.B. received its initial complaint in this matter and commenced an investigation, nor is it

relevant. What is relevant is that the actions alleged by the Board occurred while Chesna occupied his judicial office. Accordingly, we hold that this Court properly has jurisdiction over respondent for the acts alleged by the Judicial Conduct Board.

Having determined that jurisdiction is proper, we enter the following Findings of Fact and Conclusions of Law pursuant to C.J.D.R.P. No. 503.

## FINDINGS OF FACT

1. By stipulation of the parties, the Court finds that on or about November 3, 1987, respondent Robert S. Chesna was elected to the office of district justice for Magisterial District 11–02–03, located in Luzerne County and encompassing the Township of Hanover and the Boroughs of Ashley, Sugar Notch and Warrior Run and commenced his term of office on or about January 4, 1988.

2. By stipulation of the parties, the Court finds that at all times material to the claims set forth in the Board complaint and at least since on or about January 14, 1989, respondent, together with his wife, Patricia A. Chesna, has been the owner of the premises located at 882 Sans Souci Parkway, Hanover Township, Luzerne County, Pennsylvania, popularly known as Chesna's Service Station.

3. The Court finds the uncontroverted testimony of Barry Moran, a Special Agent with the Office of the Attorney General, as corroborated in part by the testimony of Dorinda Sims, also a Special Agent with the Office of the Attorney General, to be credible. Based on that testimony, the Court finds the following:

(a) An investigation of alleged illegal gambling activities at Chesna's Service Station was conducted by the Office of the Attorney General which investigation included surveillance of Chesna's Service Station on January 4, 5, 7, 8, 10, 12, and 14 of 1991.

(b) During this surveillance, Barry Moran observed machines thought to be video gambling devices in a back room of Chesna's Service Station as well as two additional machines located in a service bay of the station.

(c) Barry Moran observed on one occasion an individual which Moran identified as the respondent engaged in what appeared to be cleaning of one of the machines located in the service bay.

(d) On January 14, 1991, Barry Moran entered Chesna's Service Station and, with the permission of Alex Chesna, the respondent's brother, entered the back room of the Service Station by means of a door controlled by a combination "punch number" lock, the combination of which had been revealed to Moran by a confidential informant. Upon gaining entry to the back room, Moran observed eight machines thought to constitute gambling devices in the room and played one of the machines for a period of time.

(e) On January 15, 1991, Moran again entered the back room of Chesna's Service Station and inserted two marked twenty dollar bills into one of the machines. Moran played the machine for approximately twenty minutes to one-half hour. Moran then approached Alex Chesna and informed him that he had accumulated 102 credits on the machine. Alex Chesna accompanied Moran to the back room and used a device similar to a garage door opener to "erase" the credits. Alex Chesna then proceeded with Moran to the front office of the Service Station and paid Moran the sum of Twenty–Five Dollars and Fifty Cents ($25.50).

(f) After leaving Chesna's Service Station, Moran met with President Judge Patrick Toole of the Court of Common Pleas of Luzerne County shortly after 9:30 P.M. on January 15, 1991 for the purpose of obtaining a search warrant.

4. The Court accepts JCB exhibit 8 as a true and correct copy of a search warrant issued by President Judge Toole at 9:30 P.M. on January 15, 1991 authorizing a search of Chesna's Service Station for the purpose of searching and seizing video poker machines, gambling records and paraphernalia.

5. Based on the testimony of Barry Moran, the Court finds that ten video machines alleged to constitute unlawful gambling devices, as well as various records and other

items were found and seized during the search of Chesna's Service Station executed pursuant to warrant on January 15, 1991. The Court finds, based on a videotape admitted into evidence as JCB exhibit 11, that eight video machines alleged to constitute unlawful gambling devices were present in the back room of Chesna's Service Station on the night of January 15, 1991. Based on Agent Moran's testimony, the Court finds that the respondent arrived at Chesna's Service Station prior to the conclusion of the search and seizure operation and was given and reviewed copies of the search warrant as well as an inventory of items seized, admitted into evidence as JCB exhibit 10.

6. Based on the testimony of Barry Moran, the Court finds that on the morning of January 16, 1991, respondent agreed to meet with Agent Moran and representatives of the Attorney General's Office at a motel in Mount Laurel, Pennsylvania.

7. Based on the testimony of Barry Moran, as corroborated by the testimony of former Deputy Attorney General Kirk Wiedemer, which the Court finds to be credible, respondent did meet with Moran along with Wiedemer and Deputy Attorney General John Burfete at the mutually agreed location on January 16, 1991 and was advised of certain rights by Mr. Burfete.

8. Based on the testimony of Barry Moran, the Court finds that respondent then spoke with Agent Moran outside of the presence of Burfete and Wiedemer. During this conversation, respondent admitted the following:

(a) Respondent stated that he had constructed the back room in the garage approximately three years earlier.

(b) Respondent acknowledged ownership of eight of the ten machines seized.

(c) Respondent stated that revenues from the machines were approximately $1,200 per week, which was used to "put his kids through college."

(d) Respondent admitted that he removed money from the machines every other day.

9. Based on the testimony of Barry Moran, the Court finds that following the seizure on the night of January 15, 1991, the machines were taken to the Scranton Office of the Bureau of Criminal Investigations, Office of the Attorney General and that on February 7, 1991, Agent Moran removed the contents of the machines, which included $697.50 in cash and plastic buckets from eight of the ten machines. Among cash seized were the two marked twenty-dollar bills inserted by Agent Moran into machine number 5 on January 15, 1991.

10. By stipulation of the parties, the Court finds that on February 8, 1991, Agent Moran transported the plastic containers removed from the machines to Trooper Frank Zanin of the Pennsylvania State Police, Troop R, Dunmore, Pennsylvania and that Trooper Zanin subsequently identified latent fingerprints found on three of the containers as those of the respondent. The parties have also stipulated to the chain of custody of all exhibits, including the various video poker machines and components thereof.

11. The Court finds that J.J. Girard, formerly a trooper with the Pennsylvania State Police and assigned to the Gambling Unit, Troop L, Reading, Pennsylvania, is qualified to give an expert opinion in the analysis of gambling methods and the examination of gambling devices. The Court finds the testimony of Mr. Girard to be credible and persuasive.

12. Based on Mr. Girard's testimony, the Court finds that Mr. Girard examined all of the machines seized from Chesna's Service Station at the Scranton office of the Bureau of Criminal Investigation, Office of the Attorney General on or about March 21, 1991.

13. On the basis of his examination and expertise, the Court accepts as fact Mr. Girard's opinion that the machines seized constitute gambling devices *per se.*

14. On the basis of his examination and expertise, the Court accepts as fact Mr. Girard's opinion that certain of the records seized from Chesna's Service Station on January 15, 1991 and admitted into evidence as JCB exhibits 29 and 30 constitute gambling records.

15. By stipulation of the parties, the Court finds that documents admitted into

evidence as JCB exhibit 1 constitute true and correct copies of court records from the Court of Common Pleas of Luzerne County, specifically relating to Case No. 91–CR–001403, entitled *Commonwealth v. Robert Chesna.*

16. Pursuant to records of the Court of Common Pleas of Luzerne County, the Court finds that on May 15, 1991, respondent was charged with violations of 18 Pa.C.S. Section 5513 relating to unlawful gambling devices and 18 Pa.C.S. Section 903, conspiracy.

17. Pursuant to records of the Court of Common Pleas of Luzerne County, including a transcript admitted into evidence as JCB exhibit 4, the Court finds that on January 22, 1992, respondent was admitted into an Accelerated Rehabilitation Program (ARD) after a hearing before the Honorable Ann H. Lokuta of the Court of Common Pleas of Luzerne County. As a condition of ARD, respondent agreed to resign from his judicial office and not to hold said office during the time of the probationary period, which was set at 23 months. Respondent was also ordered to pay restitution in the amount of $250.00 and to perform 180 hours of community service. The machines and cash seized on January 15, 1991 were ordered forfeited.

## CONCLUSIONS OF LAW

1. The facts as found by this Court constitute clear and convincing evidence to support a conclusion that respondent engaged an activity prohibited by law, specifically:

(a) Intentionally or knowingly maintaining devices used for gambling purposes, which is prohibited by 18 Pa.C.S. Section 5513(a)(1) and classified as a first degree misdemeanor thereunder; and

(b) Being the owner of Chesna's Service Station, knowingly permitting or suffering the premises, or any part thereof, to be used for the purpose of unlawful gambling in violation of 18 Pa.C.S. Section 5513(a)(4) and classified as a first degree misdemeanor thereunder.

2. Respondent's unlawful actions violate Article V, Section 17(b) of the Pennsylvania Constitution in that respondent did engage in an activity prohibited by law.

3. Respondent's unlawful actions constitute conduct which brings the judicial office into disrepute.

4. Respondent's unlawful conduct violates Rule 13 of the Rules Governing Standards of Conduct of District Justices prescribed by the Supreme Court of Pennsylvania in that respondent engaged in an activity prohibited by law.

5. The Judicial Conduct Board has not shown by clear and convincing evidence that respondent has engaged in misbehavior in office. Accordingly, Count 1 of the Complaint is dismissed.

6. The Judicial Conduct Board has not shown by clear and convincing evidence that respondent's actions violate Rules 1 or 2 A of the Rules Governing Standards of Conduct of District Justices. Accordingly, Counts 3 and 4 of the Complaint are dismissed.

7. Respondent is subject to disciplinary action by this Court pursuant to Article V, Section 18(d)(1) of the Pennsylvania Constitution, which states that a justice, judge or justice of the peace may be suspended, removed or otherwise disciplined by this Court for, *inter alia,* violation of section 17 of Article V, conduct which brings the judicial office into disrepute and conduct in violation of a canon or rule prescribed by the Supreme Court.

## ORDER

PER CURIAM.

AND NOW, this 14th day of March, 1995, based on the above conclusions of law, it is hereby ORDERED:

1. That the Respondent, Robert S. Chesna, former district justice, is subject to disciplinary sanctions under Section 18(d)(1) of Article V of the Pennsylvania Constitution for the following reasons:

(a) Respondent engaged in activity prohibited by law, which is prohibited under Art. V, Section 17(b) of the Pennsylvania Constitution;

(b) Respondent engaged in activities which brought the judicial office into disrepute; and

(c) Respondent's unlawful conduct violates Rule 13 of the Rules Governing Standards of Conduct of District Justices prescribed by the Pennsylvania Supreme Court in that Respondent engaged in an activity prohibited by law.

2. That Counts 1, 3 and 4 of the Judicial Conduct Board's Complaint are dismissed.

3. Pursuant to C.J.D.R.P. No. 503 (formerly Interim Rule of Procedure 26), the attached findings of fact and conclusions of law are filed and shall be served on the Judicial Conduct Board and the Respondent.

4. Either party may file written Objections to the Court's findings of fact and conclusions of law within ten (10) days of the date of this Order. Said Objections shall include the basis therefore and shall be served on the opposing party.

5. If no exceptions are filed, upon the expiration of the time period for filing Objections, this Court shall issue an Order setting a date for a hearing on the sanctions which will be imposed.

### ORDER

PER CURIAM.

AND NOW, this 28th day of March, it appearing that the Respondent has not filed Objections to this Court's March 14, 1995 Findings of Fact and Conclusions of Law, said Findings and Conclusions are now final under C.J.D.R.P. No. 503(C), and it is hereby ORDERED that:

1. A sanctions hearing shall be held on May 23, 1995, to commence at 9:30 a.m. in Commonwealth Court Courtroom No. 1, 5th Floor, South Office Building, Harrisburg, Pennsylvania.

2. On or before May 2, 1995, the Judicial Conduct Board and the Respondent shall file with the Court a list of witnesses whose testimony they intend to offer at the sanction hearing. The parties shall serve copies of witness lists upon the opposing party or opposing counsel.

### ORDER

PER CURIAM.

AND NOW, this 25th day of May, 1995, Robert S. Chesna is hereby removed from office as a District Justice, effective as of January 22, 1992 and is hereby declared to be ineligible thereafter for judicial office.