In re Moira C. HARRINGTON, Pittsburgh City Magistrate, Fifth Judicial District, Allegheny County.

No. 6 JD 04.

Court of Judicial Discipline of Pennsylvania.

March 2, 2005.

Order Affirming Decision over Objections May 2, 2005.

Order Imposing Sanctions May 18, 2005.

Before: DEBBIE O'DELL SENECA, P.J., JOSEPH A. HALESEY, ROBERT L. CAPOFERRI, PAUL P. PANEPINTO, RICHARD A. SPRAGUE, LAWRENCE J. O'TOOLE, WILLIAM H. LAMB, MARC SANDLER.

SPRAGUE, Judge.

## I.  *INTRODUCTION*

The Judicial Conduct Board (Board) filed a Complaint with this Court on October 29, 2004 against Magistrate Moira C. Harrington (Respondent) consisting of two counts which charge Respondent as follows:

1.  Violation of Article V, § 17(b) of the Pennsylvania Constitution for engaging in activity prohibited by law (Count 1); and

2.  Violation of Article V, § 18(d)(1) of the Pennsylvania Constitution for engaging in conduct which brings the judicial office into disrepute (Count 2).

The conduct which is said to give rise to these violations consists in Respondent's parking her motor vehicle at expired parking meters on a number of occasions over the course of a two week period in downtown Pittsburgh and in placing on her windshield parking tickets which had been issued to others for overtime parking of other vehicles.

The Board and the Respondent have submitted stipulations of fact in lieu of trial under C.J.D.R.P. No. 502(D)(1) and a waiver of trial.  The Court accepts those stipulations of fact in pertinent part, recited below, as the facts necessary for the determination of this case.

## II.  *FINDINGS OF FACT*

■ 1.  Pursuant to Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania and Judicial Conduct Board Rule of Procedure 31(A)(3), promulgated by the Pennsylvania Supreme Court on March 20, 1995 (amended 1996), the Board is granted authority to determine whether there is probable cause to file formal charges, and, when it concludes that probable cause exists, to file formal charges, against a justice, judge, or justice of the peace, for proscribed conduct and to present the case in support of such charges before the Court of Judicial Discipline.

2.  Since on or about July 1989, the Respondent was appointed Magistrate for the Pittsburgh Municipal Courts, City of Pittsburgh, by then Mayor Sophie Masloff, and continued to serve on the bench until December 31, 2004, when the Pittsburgh Municipal Court was dissolved by Order of the Supreme Court of Pennsylvania dated November 29, 2004, effective January 1, 2005.  The Respondent's office was located at Pittsburgh Municipal Courts, 660 First Avenue, Pittsburgh, Pennsylvania 15219.

3.  Pittsburgh City Magistrates typically rotated through City Court, hearing various types of cases, including those dealing with housing, criminal, and traffic offenses.

4.  Between February 23 and March 8, 2004, the Respondent's red Subaru, Pennsylvania License Number EXN–4485, with vanity plates "MOIRA", was parked on six (6) occasions at expired meters in downtown Pittsburgh.

5.  On Monday, February 23, 2004, the Respondent's red Subaru was parked at an expired meter (No. D–58) in the 200 block of First Avenue.  Her car remained parked at this expired meter for at least as early as 11:00 a.m. until 3:00 p.m., when Respondent came out of the YMCA, removed a parking ticket from her windshield, entered her car, and drove away.

6. On Tuesday, February 24, 2004, at 11:15 a.m., the Respondent's red Subaru was observed parked at an expired meter (D–51) in the 300 block of First Avenue. A parking ticket was on the windshield of her automobile. However, the parking ticket had been issued to a black Nissan SUV, Pennsylvania License No. FBD–7902, on February 23, 2004, at 8:41 a.m. at meter number D–57 in the 200 block of First Avenue. The black Nissan SUV was not registered to the Respondent. The Respondent's red Subaru remained parked at expired meter D–51 until approximately 1:30 p.m., when the Respondent came out of the YMCA, took the parking ticket off the windshield, got into the vehicle and drove away.

7. On Tuesday, February 24, 2004, at 1:45 p.m., the Respondent's red Subaru was parked at expired meter D–21 in the 100 block of Ross Street in downtown Pittsburgh, near the location where the Respondent has a private law office. The same parking ticket (issued to the Black Nissan SUV on February 23, 2004), which Respondent had just removed from the windshield in the 300 block of First Avenue, was then back on the windshield of her vehicle, which remained parked at this expired meter (D–21) until 6:10 p.m., when Respondent returned to her vehicle, removed the ticket from her windshield, and drove away.

8. On Thursday, February 26, 2004, at approximately 3:45 p.m., the Respondent drove her red Subaru automobile from the Special Permit lot at the Municipal Courts building to the YMCA, where she parked at expired meter D–53. The Respondent got out of her car, opened the passenger side door, and then placed a parking ticket on her own windshield. This parking ticket was the same ticket described above, issued on February 23, 2004, to a black Nissan SUV, bearing Pennsylvania License Number FBD–7902. The Respondent's vehicle remained parked at this expired meter (D–53) until 7:45 p.m., when she came out of the YMCA and approached her vehicle.

9. At this point, the Respondent was approached by Rick Earle, an investigative reporter with WPXI–TV (Channel 11) Pittsburgh, Pennsylvania, and a WPXI–TV investigative photographer, Timothy R. Holloman. Earle identified himself to the Respondent and asked her: "Are you City Magistrate Moira Harrington?" The Respondent immediately grabbed the parking ticket from the passenger side windshield of her car and threw it into the front passenger seat area of her car. She then denied her identity to Rick Earle, saying words to the effect of: "You got the wrong person, not me." Earle asked Respondent two more times if she was City Magistrate Moira Harrington, and she denied her identity two more times. The Respondent then got into her car and drove away.

10. On Friday, February 27, 2004, at approximately 11:35 a.m., the Respondent's red Subaru was found parked at an expired meter (D–17) in the 500 block of Court Place in downtown Pittsburgh. At this time there was no parking ticket on the Respondent's vehicle.

11. On Monday, March 8, 2004, at 1:45 p.m., a blue Mercury Mountaineer SUV, bearing Pennsylvania License Number EYE–3146, was observed parked in the Special Permit lot of the Pittsburgh Municipal Courts building. The vehicle had a parking ticket number 1803401 on the windshield. The parking ticket had been issued to the Mercury Mountaineer on Monday, March 8, 2004, at 10:36 a.m., at 101 Ross Street, Pittsburgh, Pennsylvania, for overtime parking in a limited parking zone. At approximately 2:45 p.m., the Respondent got into the Mercury Mountaineer, leaving the parking ticket on the

windshield, and drove to the downtown YMCA where she parked the vehicle in an area marked "Loading Zone—10 Minute Parking Only." When the Respondent exited her car and entered the YMCA, she left the parking ticket on her windshield. The Respondent's vehicle remained parked in the Loading Zone until approximately 5:20 p.m., when the Respondent came out of the YMCA and drove away, still leaving a ticket on her windshield.

12. All of the events described above were clearly recorded on video and audio, and have been telecast on WPXI–TV (Channel 11) Pittsburgh, Pennsylvania.

## III. *DISCUSSION*

### Count 1.

In Count 1, the Board charges Respondent violated Section 17(b) of the Pennsylvania Constitution. That section provides:

> Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

■ It is apparent that in this section of the Constitution "justices and judges" are treated separately from "justices of the peace." [1]

In *In re Joyce and Terrick,* 712 A.2d 834 (Pa.Ct.Jud.Disc.1998) we said, referring to § 17(b):

> In the section, justices of the peace … are treated separately from justices and judges, for a reason no more complicated than that justices of the peace are governed by a separate and different Code of Conduct than the Code of Judi-

cial Conduct which applies to justices and judges.

*Id.* at 845.

In that case, we went on to hold that, although the second sentence of § 17(b) does not state in so many words that District Justices shall not *violate* the rules governing their conduct—but only that they shall be governed by them—when read in context with the first sentence, elementary principles of statutory construction required that the second sentence be so construed, i.e., as proscribing a violation of those rules—otherwise the second sentence would have no meaning. Thus, we held that a violation of the Rules Governing Standards of Conduct of District Justices was an automatic, derivative violation of § 17(b) of the Constitution. That, however, does not address the problem with the Board's charge in this case.

■ The problem with the Board's charge that District Justice Harrington violated § 17(b) by "engaging in activity prohibited by law" is that § 17(b) does not prohibit district justices from engaging in "activity prohibited by law."

It might reasonably be said that if justices of the Supreme Court and judges of our courts of common pleas and of our appellate courts are forbidden from engaging in activity prohibited by law, then district justices certainly should be. That may well be, but no massaging of the rules of statutory construction can rehabilitate Count 1 because the plain language of § 17(b) precludes it. As stated earlier, justices of the peace are treated separately from justices and judges in § 17(b) and the injunction against illegal activity, while specifically directed at "justices and judges," in that part of the section dealing

---

1. "Justices of the Peace" have been more recently known as "District Justices" and are now known as "Magisterial District Judges." See Pennsylvania Supreme Court Order dated January 6, 2005, effective January 29, 2005.

with "justices of the peace" it is, remarkably, omitted. Remarkably, it may be; but, decisively; and the plain words[2] of the section require our conclusion that the Board has not thereby established a violation of § 17(b) of the Pennsylvania Constitution.

■ Faced then, as we are, with the realization that Respondent, admittedly, did break the law, we note that Rule 2A of the Rules Governing Standards of Conduct of District Justices provides:

A. A district justice shall respect and comply with the law . . . .

It is obvious that Respondent's conduct violated this Rule; we so find; and we recognize that Respondent has not been charged with a violation of Rule 2A, but we are reminded of our Supreme Court's decision in *Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988). In the *Glancey* case the Supreme Court of Pennsylvania held that Judge Glancey, by accepting a cash gift, had violated § 17(c) of the Constitution *for which he had not been charged*. The Supreme Court said:

The fact that the Board was concerned primarily with 17(b) . . . does not preclude this Court from making a finding of a violation under 17(c), if the record warrants such a finding.

*Id.* at 286, 542 A.2d at 1355. The Supreme Court held that such a finding did not violate Judge Glancey's due process rights because "[he] was fully apprised of what conduct had precipitated disciplinary action against him . . . ." *Ibid.* n. 9. *See, also, In the Matter of Cunningham*, 517 Pa. 417, 429, 538 A.2d 473, 479 (1988).[3] So, in this case, since Respondent admittedly failed to comply with the law and since that is specifically prohibited by Rule 2A

of the Rules Governing Standards of Conduct of District Justices, we find that Respondent has violated that Rule. Such a finding does not implicate due process considerations inasmuch as there has never been any question about what conduct precipitated disciplinary action against this Respondent, or that she has been fully apprised of it.

■ This finding has a further consequence. As we said in *In re Joyce and Terrick, supra:*

[A] violation of the Rules Governing Standards of Conduct of District Justices is an automatic, derivative violation of § 17(b) of the Constitution.

*Id.* at 845–46. *See, also, In re Zoller*, 792 A.2d 34, 36 (Pa.Ct.Jud.Disc.2002); *In re Kelly*, 757 A.2d 456, 460 (Pa.Ct.Jud.Disc. 2000); *In re Strock*, 727 A.2d 653, 660 (Pa.Ct.Jud.Disc.1998). Since we have found a violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices, we find an automatic, derivative violation of § 17(b) of the Pennsylvania Constitution.

## Count 2.

■ The Board has charged, and Respondent has admitted, that on five occasions over a period of about two weeks, Respondent parked her car at expired parking meters on the streets of downtown Pittsburgh, each time placing on the windshield of her car parking tickets which had been issued to others for overtime parking of other vehicles. The Board charges that this conduct is such that brings the judicial office into disrepute.

In addressing this charge we will review earlier cases where this Court has examined the concept of "conduct which brings the judicial office into disrepute" in its

---

2. See 1 Pa.C.S.A. § 1921(b).

3. This Court has followed these decisions of the Supreme Court, see, *In re Trkula*, 699 A.2d 3, 12 (Pa.Ct.Jud.Disc.1997).

constitutional context. In *In re Trkula*, 699 A.2d 3 (Pa.Ct.Jud.Disc.1997) we said:

In *In re Smith*, 687 A.2d 1229 (Pa.Ct. Jud.Disc.1996), this Court noted that the conduct of a judge which results in a decline in the public esteem for that judge, may not support the conclusion that the conduct has brought the judiciary as a whole into disrepute, absent a persuasive showing by the Board that the conduct is so extreme as to have brought the judicial office itself into disrepute. In *In re Cicchetti*, slip. op. at 26–27, 697 A.2d 297, 310 (Pa.Ct.Jud. Disc.1997), this Court reiterated that notion as it concluded that a judge's conduct in persisting in making sexual advances towards a subordinate employee who repeatedly rejected the advances constituted conduct of such an extreme nature that the judicial officer had brought the judicial office itself into disrepute.

*In Cicchetti*, 697 A.2d at 312, this Court noted that:

The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*In re Trkula, supra,* at 7.

In this case the stipulated facts establish that Respondent went to some serious lengths to avoid putting a quarter in a parking meter. The stipulations do not include any information as to how exactly the Respondent obtained the tickets which she placed on her windshield but it is quite reasonable to conclude that she took them off other cars which had been ticketed.[4] Nor do the stipulations announce Respondent's purpose here; but no announcement

is necessary: it is obvious the purpose was to enable her to park without paying the trifling amount required and to deceive the enforcing officer thereby escaping the small fine imposed for overtime parking.

In *In re Smith, supra,* we said that:

"Disrepute" necessarily incorporates some standard with regard to the reasonable expectations of the public of a judicial officer's conduct.

*Smith, supra,* at 1239. *See, also, In re McCarthy,* 828 A.2d 25, 29 (Pa.Ct.Jud. Disc.2003); *In re Zoller,* 792 A.2d 34, 38 (Pa.Ct.Jud.Disc.2002).

We think the reasonable expectations of the public would include the expectation that a judicial officer would obey a common ordinance which applies to all who might wish to park a motor vehicle on the streets of Pittsburgh and certainly would include the expectation that she would not devise and carry out a scheme to "fool" the enforcing officer in order to defeat the enforcement of the law. It is, after all, "the law" that she is entrusted to enforce and expected to respect.

We certainly recognize that no one would consider parking at an expired meter to be a heinous crime, but it is the very triviality of the offense which makes Respondent's determination to defeat its application to her so unbecoming a judicial officer.

There are few among us who operate motor vehicles on a regular basis who have not been the recipient of an overtime parking ticket, and few of us who have not experienced some degree of vexation on those occasions. But the ordinary citizen either puts the coin in the slot or pays the fine. We daresay that Respondent's conduct here described: first, intentionally disobeying the law, and then inventing a devious strategy to avoid payment of the

---

**4.** This, of course, would have other implications for the owners of those vehicles.

statutory fine, is exactly the type of conduct which causes an ordinary citizen to believe that judges—i.e., all judges—consider themselves to be "above the law"—a privileged class. It is exactly this type of conduct which gives judges a "bad name" and which brings the judicial office itself into disrepute. We so hold.

## IV. *CONCLUSIONS OF LAW*

1. The conduct of Respondent was a violation of Rule 2A of the Rules Governing Standards of Conduct of District Justices and thus a violation of Section 17(b) of the Pennsylvania Constitution.

2. The conduct of Respondent was such that brought the judicial office into disrepute.

3. The Respondent is subject to discipline under Article V, Section 18(d)(1) of the Pennsylvania Constitution.

## ORDER

PER CURIAM.

AND NOW, this 2nd day of March, 2005, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent,

That, either party may file written objections to the Court's Conclusions of

Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and issue an Order setting a date for such oral argument,

That, in the event objections are not filed, within the time set forth above, the Findings of Fact and Conclusions of Law shall become final, and this Court will conduct a hearing on the issue of sanctions on May 18, 2005 at 11:00 a.m. in Commonwealth Court, Courtroom No. 1, 5th Floor, Irvis Office Building, Harrisburg, Pennsylvania, and

That, the Judicial Conduct Board and the Respondent shall each file on or before May 13, 2005 a list of such witnesses as either party may intend to present for testimony at that hearing, and shall serve a copy of said list upon the other party.

## ORDER AFFIRMING DECISION OVER OBJECTIONS

May 2, 2005.

PER CURIAM.

AND NOW, this 2nd day of May, 2005, the Objections of the Respondent to the Conclusions of Law are dismissed and the Findings of Fact and Conclusions of Law are hereby affirmed.[1]

---

1. We here address the contention made by Respondent in her Objections that our finding that Respondent's conduct constitutes a violation of Rule 2A. of the Rules Governing Standards of Conduct of District Justices is at variance with our holdings in a number of other cases.

Rule 2A., in pertinent part, provides that "A district justice shall respect and comply with the law." This Respondent admittedly did

not comply with the law, this the challenged Conclusion of Law, that Respondent did not comply with the law, is certainly correct.

On a number of occasions, this Court has held that the applicability of Canon 2 of the Code of Judicial Conduct and Rule 2A. of the Rules Governing Standards of Conduct of District Justices, which are essentially verbatim, is limited to cases where the conduct at issue was involved in the decision-making

process. However, in those cases, the Respondents were not charged merely with "failure to comply with the law," which is a simple, clear, and understandable concept susceptible of objective application, but with failing to "conduct [themselves] at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Starting with *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997), this Court has repeatedly announced its intention to attach demarcated, understandable limits on the language of Canon 2 and Rule 2A. which the Court has recognized as vague and troublesome. This language is found in the headings as well as in the text of the Canon and the Rule. The heading of Canon 2 is:

"A Judge Should Avoid Impropriety and the Appearance of Impropriety."

The heading of Rule 2A. is:

"Impropriety and Appearance of Impropriety to be Avoided."

Notions of "impropriety" and "the appearance of impropriety," and the words themselves, mean different things to different people; they beg for subjective interpretation. These words are subject to the same objections and present the same danger as the word "misconduct"—as in "misconduct in office." See, e.g., the discussion of necessity for narrow definition of "misconduct in office" in *In re Cicchetti, supra,* at 310–11 and cases cited therein. If anything, the words "impropriety" and "appearance of impropriety" are even more ill-defined and even more apt to cause problems if their meaning is left unconfined and open to subjective interpretation, than the word "misconduct."

The text of the Canon provides that "[a judge] should [the Rule says 'shall'] conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," language which also is vague and susceptible of subjective application. The issue was first encountered in *In re Cicchetti* where, in an effort to keep clear of this morass the Court, focusing on the coupling of the words "integrity" and "impartiality," held:

Canon 2 ... [is] directed at conduct which would impugn or detract from the ... "integrity and impartiality ... of the judiciary." "Integrity" must be read *in pari materia* with ... "impartiality" in Canon 2. Both of these words and both of these Canons [referring also to Canon 1] exhort judges to carefully preserve all appearance of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influence. *In re Cicchetti, supra,* at 313.

This approach and this conclusion was approved by the Pennsylvania Supreme Court. *See, In re Cicchetti,* 560 Pa. 183, 743 A.2d 431 (2000) where that Court said:

Canon 2 similarly [as Canon 1] addresses the judicial decision-making process and seeks to avoid the appearance of influence over judicial activities. Appellee is not subject to censure for a violation of Canon 2 based on his conduct toward Ms. Brueggman because it was independent of his decision-making duties.

*Id.* at 440.

Thus, with this interpretation, a Canon [and Rule] was in place that was understandable and susceptible of predictable enforcement, and, we believe, in harmony with the intention of the drafters. But that interpretation of the language of Canon 2 was only occasioned by and directed at the provocative and vague language we have been discussing: it was not occasioned by or directed at the simple proviso that "[A judge] shall comply with the law."

However, in view of Respondent's Objection here, a review of the prior opinions of this Court dealing with Canon 2 or Rule 2A. is in order.

These cases are: *In re Smith,* 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996), *In re Cicchetti,* 697 A.2d 297, (Pa.Ct.Jud.Disc.1997), *aff'd,* 560 Pa. 183, 743 A.2d 431 (2000), *In re Walters,* 697 A.2d 320 (Pa.Ct.Jud.Disc.1997), *In re Trkula,* 699 A.2d 3 (Pa.Ct.Jud.Disc.1997), *In re Joyce & Terrick,* 712 A.2d 834 (Pa.Ct.Jud.Disc. 1998), *In re Strock,* 727 A.2d 653 (Pa.Ct.Jud. Disc.1998), *In re Kelly,* 757 A.2d 456 (Pa.Ct. Jud.Disc.2000), and *In re Toczydlowski,* 853 A.2d 20 (Pa.Ct.Jud.Disc.2004).

In *Trkula, Joyce and Terrick,* and *Kelly,* violations of Rule 2A. *were found* because the conduct—in each case an attempt to influence the outcome of cases before another judge— was essentially identical to the conduct of Justice Larsen which the Supreme Court had held to be a violation of Canon 2 in *In the Matter of Larsen,* Appendix I, 532 Pa. 326, 485, 616 A.2d 529, 610 (1992). There, the Supreme Court held that Justice Larsen's *ex parte* communication with Judge Ross in a case pending before her "by itself raised an appearance of impropriety." So, since Harrington was not trying to influence another judge, these cases have no impact here.

In *Smith, Cicchetti* and *Strock,* where this Court found the conduct of the Respondents

CAPOFERRI, J., did not participate in the consideration or disposition of this Order.

## ORDER IMPOSING SANCTIONS

May 18, 2005

PER CURIAM.

AND NOW, this 18th day of May, 2005, after hearing held this day on the issue of sanctions, it is hereby ORDERED that Respondent is barred from holding judicial office for a period of five (5) years from the date of this Order.

did not come within the narrow definition, the Board *did not charge* that the conduct violated any law, as it has in *Harrington*, so those cases have no impact here.

That leaves *Walters* and *Toczydlowski*. In those cases the Board *did charge* that the Respondents violated the law: In *Walters*, the Motor Vehicle Code (DUI), in *Toczydlowski*, the Criminal Code (possession of marijuana) and, despite that, the Court held there was no violation of Rule 2A. in either case.

The difference is that in both *Walters* and *Toczydlowski* the Board, in making the charge that Rule 2A. had been violated, included the charge that the Respondents had failed to "conduct [themselves] at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," conduct which, as noted, has been limited to conduct occurring in the "decision-making process." *See, Cicchetti*, 560 Pa. at 201, 743 A.2d at 441. In that circumstance this Court did not feel called upon in those cases to

"separate out" the "comply with the law" language and deal with it by itself.

In this case, however, the Board never charged Respondent with a violation of Rule 2A. Rule 2A. came into the picture when this Court found that Section 17(b) of the Constitution (violation of which had been charged), did not apply to district justices, and the Court, recognizing that the Respondent had obviously failed to comply with the law, turned to Rule 2A. and did "separate out" the language that district justices "shall respect and comply with the law." Thus, there was no occasion to make reference to the troublesome language of the Rule—a violation of which would require a finding that the conduct occurred in the decision-making process. The only language at issue here is that which the Court itself put in issue. And that language bears none of the disability of the vague and difficult provisions of the Rule, being, as it is, by itself, clear and understandable, such that lends itself easily to objective application, and leads to the easy conclusion that, since this Respondent did not comply with the law, she did not "comply with the law."