In re David J. MURPHY, Former Magisterial District Judge, District Court 32–2–38, Delaware County.

No. 1 JD 10.

Court of Judicial Discipline
of Pennsylvania.

Nov. 23, 2010.

Daniel T. Reimer, Assistant Counsel, Judicial Conduct Board, for the Judicial Conduct Board.

David J. Murphy, Media, PA, pro se.

Before JUDGE, SR., P.J., KURTZ, P.J.E., JAMES, MORRIS, CURRAN, and McGINLEY, JJ.

OPINION BY Judge McGINLEY.

## I. *INTRODUCTION*

The Judicial Conduct Board (Board) filed a Complaint with this Court on September 24, 2010 against Former Magisterial District Judge David J. Murphy (Respondent). The Complaint recites that Respondent entered guilty pleas in the Court of Common Pleas of Delaware County to Forgery, Identity Theft, and Perjury, all graded as misdemeanors of the first degree, as well as to False Signatures in Nomination Petitions, and Criminal Conspiracy, both ungraded misdemeanors. The Complaint further recites that, on July 21, 2010, Respondent was sentenced to an aggregate period of probation of four years and ordered to perform 200 hours of community service; and that Respondent has not appealed from judgment of sentence.

The Board has charged that the Respondent's conduct set out in the criminal charges constitutes misdemeanors to which Respondent has pleaded guilty and subjects him to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution for the following reasons:

1. the conduct is such that brings the judicial office into disrepute (Count 1),

2. "by virtue of the conviction as set forth above, Respondent has violated

Article V, § 17(b) of the Pennsylvania Constitution by engaging in activity prohibited by law" (Count 2).

Respondent has filed what he styles as a "Response To Complaint"[1] in which Respondent admits all the relevant allegations of the Complaint. The Court hereby accepts the allegations of the Complaint, in pertinent part, as the facts necessary for disposition of this case.

## II. *FINDINGS OF FACT*

1. This action is taken pursuant to the authority of the Board under Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania, which grants the Board the authority to determine whether there is probable cause to file formal charges, and, when it concludes that probable cause exists to file formal charges against a justice, judge, or magisterial district judge for proscribed conduct, to present the case in support of such charges before the Court of Judicial Discipline.

2. From January 6, 1992 until August 26, 2009, Respondent served as a Magisterial District Judge of Delaware County, Pennsylvania, in District Court 32–2–38. As a Magisterial District Judge, he was subject to all the duties and responsibilities imposed on him by the Constitution of Pennsylvania.

3. On August 26, 2009, Respondent was placed on paid administrative leave by the President Judge of Delaware County after a criminal investigation had been launched by the Delaware County District Attorney's Office concerning Respondent's alleged forgery of nomination petitions for his 2009 campaign for re-election.[2]

4. Despite being on administrative leave, Respondent was successful in his bid for re-election and his commission for another term was issued on December 21, 2009. Respondent signed his Oath of Office on January 4, 2010.

5. Respondent continued to be placed on paid administrative leave until March 29, 2010, on which date he was placed on unpaid leave following his arraignment on multiple criminal counts.

6. On March 31, 2010, Respondent retired from his position as Magisterial District Judge.

7. On July 21, 2010, Respondent entered a guilty plea to sixty-four (64) counts of Forgery, 18 Pa.C.S.A. § 4101 (graded as misdemeanors of the first degree); sixty-four (64) counts of Identify Theft, 18 Pa. C.S.A. § 4120 (graded as misdemeanors of the first degree); two (2) counts of Perjury, 25 P.S. § 3502 (Election Code) (graded as misdemeanors of the first degree); sixty-four (64) counts of False Signatures in Nomination Petitions, 25 P.S. § 3513 (Election Code) (ungraded misdemeanors) and one (1) count of Criminal Conspiracy, 18 Pa.C.S.A. § 903 (graded as a misdemeanor of the first degree).

8. Respondent was immediately sentenced to an aggregate period of probation of four (4) years, ordered to perform 200 hours of community service and to obey the general conditions of his probationary supervision. A certified copy of the Certificate of Imposition of Judgment of Sentence is attached as Exhibit A to the Board Complaint; a certified copy of the signed Criminal Information is attached as Exhibit B to the Board Complaint; and a copy of the transcript from the sentencing

---

1. There is no provision in our rules for such a filing but we will treat it as an Answer, provision for which is found in C.J.D.R.P. No. 413.

2. Respondent denies that he was placed on administrative leave after the criminal investigation had been instituted; he says the leave began before the investigation. It doesn't matter.

proceedings is attached as Exhibit C to the Board Complaint.

9. Respondent has not appealed from judgment of sentence, and therefore his conviction is final for purposes of this proceeding. A certified copy of the docket is attached as Exhibit D to the Board Complaint.

## III. DISCUSSION

### A. COUNT 1.

■ In Count 1 the Board charges that Respondent has engaged in conduct which is such that brings the judicial office into disrepute. This charge arises out of Respondent's forging 64 signatures on the Nomination Petitions which he filed with affidavits falsely representing that the forged signatures were authentic. The Petitions with the affidavits were filed in connection with his 2009 campaign for re-election to the office of Magisterial District Judge for District Court 32–2–38, Delaware County, Pennsylvania.

This Court has been called upon frequently to decide whether particular conduct is such that—in the words of our Constitution—"brings the judicial office into disrepute." [3]

The conduct in these cases has been very different—it has ranged from public drunkenness (*In re McCarthy*, 828 A.2d 25 (Pa.Ct.Jud.Disc.2003)), to sexual harassment of a courthouse employee (*In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997)), *aff'd*, (560 Pa. 183, 743 A.2d 431 (2000)), to being repeatedly late for court (*In re Lokuta*, 964 A.2d 988 (Pa.Ct.Jud.Disc.2008)).[4]

We reiterate what we said in *In re Berry*, 979 A.2d 991, 997–98 (Pa.Ct.Jud. Disc.2009);

In evaluating the conduct in each and every one of these cases the Court has consistently applied certain principles and tests in our determinations that any particular conduct was—or was not—such that brings the judicial office into disrepute. In all cases where those holdings have been reviewed by our Supreme Court, those holdings have been affirmed. *See*, *In re Berkhimer*, 593 Pa. 366, 930 A.2d 1255 (2007); *In re Harrington*, 587 Pa. 407, 899 A.2d 1120 (2006); *In re McCarthy*, 576 Pa. 224, 839 A.2d 182 (2003); *In re Cicchetti*, 560 Pa. 183, 743 A.2d 431 (2000).

These principles for assessing the conduct as bringing the judicial office into disrepute were first set down in this Court's opinion in *In re Smith*, 687 A.2d 1229 (Pa.Ct.Jud.Disc.1997). There we said:

It cannot be *presumed* that a violation of any other provision, constitutional, canonical or criminal *automatically* lowers public acceptance of the authority of the judicial office. (Emphasis the Court's). *Id.* at 1238.

This Court, therefore, has never presumed that a violation automatically brings the judicial office into disrepute. See cases cited *supra*.

In *Smith* we also first enunciated the principle that:

"Disrepute" necessarily incorporates some standard with regard to the rea-

---

**3.** Pa. Const., Article V, § 18(d)(1). This section of the Constitution further provides that a judicial officer is subject to discipline for conduct which brings the judicial office into disrepute "whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law."

**4.** For a more comprehensive list *see*, *In re Berry*, 979 A.2d 991, 996 (Pa.Ct.Jud.Disc. 2009).

sonable expectations of the public of a judicial officer's conduct.

This Court, therefore, has, in every case, made an assessment of what it believed the reasonable expectations of the public would be as to the judicial officer's conduct involved in the particular case.

Again, in *Smith* we set down the principle, which we have consistently followed, that "the judicial officer [must have] engaged in conduct which *is so extreme*" that it brings the judicial office into disrepute. *Id.* at 1238. See cases cited *supra.*

In our opinion in *In re Cicchetti,* 697 A.2d 297 (Pa.Ct.Jud.Disc.1997) we held that:

> The determination of whether particular conduct has brought the judicial office into disrepute, of necessity, is a determination which must be made on a case by case basis as the particular conduct in each case is scrutinized and weighed.

*Id.* at 312. This prescript is hardly surprising and is realistically unavoidable in determining whether particular conduct brings the judicial office into disrepute inasmuch as these cases are driven by the facts and the facts are always different.

These principles for determining whether particular conduct brings the judicial office into disrepute have been approved, indeed adopted by our Supreme Court. *See, e.g., In re Berkhimer,* 593 Pa. 366, 372–73, 930 A.2d 1255, 1258–59 (2007) and *In re Cicchetti,* 560 Pa. 183, 206–07, 743 A.2d 431, 443–44 (2000).

We believe it to be beyond dispute that a judge—or one who would be a judge—who is willing to lie—and under oath—and in an official document is not one who can be expected to encourage, indeed to insist,

that truth be spoken in his courtroom. Historian and philosopher, John Lukacs, holds that:

> the sense of truth exists deeper than the sense of justice (and also that untruth is more poisonous than injustice).[5]

While one may want to take some time to think about the Professor's submission, it is easy—even intuitive—to know that without truth there can be no justice; and that if a judge has been untruthful, and, as in this case, under oath and in a quite public way, then poison indeed sits upon the bench.

We mention that lying isn't always a crime. In this case it was. We mention that in this case the lying was made in derogation of the laws enacted to protect the integrity of the electoral process—laws which Respondent had himself sworn to protect. We mention that in this case the lying peremptorily appropriated the franchise of those electors whose signatures he forged on his Nomination Petitions—electors who may well have been opposed to his candidacy.

We find that Respondent's conduct was so extreme that it brings the judicial office itself into disrepute, and also that the reasonable expectations of the public as to the behavior of judicial officers certainly do not include the conduct of this Respondent described above. Consequently, we find that Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

We refer briefly to the Concurring Opinion of our respected colleague, Judge Morris. While Judge Morris does not dissent from our holding that this Respondent's conduct was such that brings the

---

5. Lukacs, *Democracy and Populism,* Yale Uni- versity Press, p. 212, 2005.

judicial office into disrepute,[6] he would prefer that the Judicial Conduct Board had charged Respondent with a violation of Rule 2A of the Rules Governing Conduct of Magisterial District Judges which requires a Magisterial District Judge to "comply with the law," Since this Respondent was convicted of a crime, Judge Morris points out, "a charge under Rule 2A would seem appropriate."[7] Judge Morris recognizes, however, that the Supreme Court's decision in *In re Harrington*, 587 Pa. 407, 899 A.2d 1120 (2006), holding that a violation of Rule 2A can only be found in cases where the conduct at issue occurred in the "decision-making process," a charge in this case under Rule 2A for failure to comply with the law would be in direct conflict with *Harrington*. In this circumstance, Judge Morris reports a desire that Rule 2A be amended to "include [a requirement that the conduct of Magisterial District Judges be in] 'compliance with the law' whether or not related to the actual decision-making process."[8] Only after finding a violation of the amended Rule 2A would Judge Morris have this Court consider whether the conduct was also such that brings the judicial office into disrepute.[9]

While this may not be an entirely illogical approach to dealing with charges of "disrepute," the Constitution places no such stricture or "condition precedent" on our consideration of charges that conduct is such that brings the judicial office into disrepute. We will continue to conduct our business in accordance with the Constitution, as it is our duty to do, and to determine whether conduct which the Board charges violates Article V, § 18(d)(1) of the Constitution because it is such that brings the judicial office into disrepute, is, or is not, such conduct—without any preliminary exercises.

### B. *COUNT 2.*

 Having found that Respondent is subject to discipline for conduct which brings the judicial office into disrepute it is not strictly necessary to address Count 2 which charges that the same conduct constitutes a violation of another section of the Constitution. We discussed this situation in *In re Eagen*, 814 A.2d 304, 306–07 (Pa.Ct.Jud.Disc.2002) and pointed out that:

> Unlike a criminal case in which the range of penalties is determined by the number of charges and the statutory sentence mandated for each offense upon which there is a finding of guilt, the scope of sanctions available to this Court is not so circumscribed. Any finding by this Court, that a judicial officer has violated the Constitution of Pennsylvania or the Code of Judicial Conduct subjects that judge to the full range of appropriate discipline. Furthermore, in exercising our discretion in imposing disciplinary sanction, we are guided not by the number of ways the Respondent's conduct has offended the Constitution or Code, but by the nature of the conduct itself and any mitigating or aggravating circumstances.

Nevertheless, we will address Count 2 and the Board's charge that Respondent's conduct is a violation of § 17(b) (as well as of § 18(d)(1)). We do so because the odd way in which the language of section 17(b) is structured has made it difficult for this Court to reach results in the application of the section which give effect to what ap-

---

6. A concept which he regards as located some degrees of latitude south of being susceptible of objective determination.

7. Concurring Opinion, pp. 940–41.

8. *Id.*

9. *Id.*

pears to be the clear intention of the section without running afoul of the clear language of the section. This has resulted in some disharmony among some of the decisions of this Court[10] and we wish to clear that up.

Section 17(b) provides:

Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. Justices of the peace shall be governed by rules or canons which shall be prescribed by the Supreme Court.

We dealt with this very same issue in *In re Harrington*, 877 A.2d 570, 574 (Pa.Ct. Jud.Disc.2005) and there we said:

It is apparent that in this section of the Constitution "justices and judges" are treated separately from "justices of the peace."[11]

In *In re Joyce and Terrick*, 712 A.2d 834 (Pa.Ct.Jud.Disc.1998) we said, referring to § 17(b):

In the section, justices of the peace ... are treated separately from justices and judges, for a reason no more complicated than that justices of the peace are governed by a separate and different Code of Conduct than the Code of Judicial Conduct which applies to justices and judges.

*Id.* at 845.

In that case, we went on to hold that, although the second sentence of § 17(b) does not state in so many words that District Justices shall not *violate* the rules governing their conduct—but only

that they shall be governed by them—when read in context with the first sentence, elementary principles of statutory construction required that the second sentence be so construed, i.e., as proscribing a violation of those rules—otherwise the second sentence would have no meaning. Thus, we held that a violation of the Rules Governing Standards of Conduct of District Justices was an automatic, derivative violation of § 17(b) of the Constitution. That, however, does not address the problem with the Board's charge in this case.

The problem with the Board's charge that District Justice Harrington violated § 17(b) by "engaging in activity prohibited by law" is that § 17(b) does not prohibit district justices from engaging in "activity prohibited by law."

It might reasonably be said that if justices of the Supreme Court and judges of our courts of common pleas and of our appellate courts are forbidden from engaging in activity prohibited by law, then district justices certainly should be. That may well be, but no massaging of the rules of statutory construction can rehabilitate Count 1 because the plain language of § 17(b) precludes it. As stated earlier, justices of the peace are treated separately from justices and judges in § 17(b) and the injunction against illegal activity, while specifically directed at "justices and judges," in that part of the section dealing with "justices of the peace" it is, remarkably, omitted. Remarkably, it may be; but, decisively;

---

**10.** We refer to *In re Amati*, 849 A.2d 320 (Pa.Ct.Jud.Disc.2004), *In re Toczydlowski*, 853 A.2d 20 (Pa.Ct.Jud.Disc.2004), *In re Walters*, 697 A.2d 320 (Pa.Ct.Jud.Disc.1997), *In re Chesna*, 659 A.2d 1091 (Pa.Ct.Jud.Disc.1995), and contrast those cases with our opinion in *In re Harrington*, 877 A.2d 570 (Pa.Ct.Jud. Disc.2005).

**11.** "Justices of the Peace" have been more recently known as "District Justices" and are now known as "Magisterial District Judges." See Pennsylvania Supreme Court Order dated January 6, 2005, effective January 29, 2005.

and the plain words [12] of the section require our conclusion that the Board has not thereby established a violation of § 17(b) of the Pennsylvania Constitution.

■■ We believe that this is the only way to apply section 17(b) and still be true to its language and we so hold. It is not for this Court to hold otherwise because we might think the intention of the draft-ers to have been otherwise when the reality is the drafters chose language which precludes such a ruling. We also hold that anything we said in the cases of *In re Amati*, 849 A.2d 320 (Pa.Ct.Jud.Disc.2004), *In re Toczydlowski*, 853 A.2d 20 (Pa.Ct. Jud.Disc.2004), *In re Walters*, 697 A.2d 320 (Pa.Ct.Jud.Disc.1997) and *In re Chesna*, 659 A.2d 1091 (Pa.Ct.Jud.Dis.1995) which may be to the contrary is overruled.[13]

12. See 1 Pa.C.S.A. § 1921(b).

13. In *Chesna* and *Walters* an additional issue, involving Rule 13 of the Rules Governing Standards of Conduct of Magisterial District Judges, came up and we will discuss that here so that our treatment of the question of the applicability of section 17(b) of the Constitution in cases where activity prohibited by law by a magisterial district judge is alleged may be complete.

In *Chesna*, the Respondent was a magisterial district judge who was operating unlawful gambling machines in the back room of his gasoline service station and this Court found that this was a violation of Article V, § 17(b) because this was activity prohibited by law, *In re Chesna, supra* at 1095. As previously mentioned, this ruling is at variance with our holding here as well as with our holding in *Harrington*, and consequently, is overruled. In addition to this holding, in *Chesna* we held that Chesna's conduct, being "an activity prohibited by law," was also a violation of Rule 13 of the Rules Governing Conduct of Magisterial District Judges and thus a violation of § 17(b) of the Constitution. Rule 13 provides in pertinent part:

Magisterial district judges, constables and all employees assigned to or appointed by magisterial district judges shall not engage, directly or indirectly, in any activity or act incompatible with the expeditious, proper and impartial discharge of their duties, including, but not limited to, (1) in [sic] any activity prohibited by law ...

Thus, if we were to follow this holding, we could find (indeed, would be required to find) a violation of Article V, § 17(b). This would be in accord with *Joyce and Terrick, Strock, Kelly*, and *Zoller* in which cases we held that a violation of a *Rule* (as opposed to a law) *did* constitute a violation of section 17(b). How-ever, we find that Respondent's conduct in the case now before us does not constitute a violation of Rule 13.

(We mention that even though the Board has not charged this Respondent with a violation of Rule 13, Respondent's due process rights would not be infringed if we found the conduct for which he has been charged also violated Rule 13. See, e.g., the Supreme Court's holdings in *In re Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988) and in *In the Matter of Cunningham*, 517 Pa. 417, 538 A.2d 473 (1988), and the holdings of this Court most recently in *In re Lokuta*, 964 A.2d 988, 1034 (Pa.Ct.Jud.Disc.2008) and cases cited therein.)

On the question of whether Rule 13 was violated here we refer to our opinion in the case of *In re Walters*, 697 A.2d 320 (Pa.Ct.Jud. Disc.1997) where we considered whether that Respondent's conduct, operating a motor vehicle while the amount of alcohol in his blood exceeded the prescribed limit in violation of the Motor Vehicle Code, constituted a violation of Rule 13. We held that it did not and explained why as follows:

It is readily seen that the rule is structured so that the activity prohibited by law, referred to in subparagraph (1) is only a modification of "activity ... incompatible with the expeditio[us], proper and impartial discharge of their duties." Since the conduct here involved—driving under the influence—can in no way be construed as activity incompatible with the expeditious, proper and impartial discharge of the duties of a district justice, it cannot be the prohibited activity referred to in subsection (1). Thus, we find that the conduct of respondent did not constitute a violation of Rule 13.

*In re Walters, supra* at 322.

So it is in *Chesna*. Chesna's conduct, conducting a gambling operation in the back room of his gasoline station, is not incompati-

## IV. CONCLUSIONS OF LAW

1. Respondent's conduct set out in the Complaint and discussed herein constitutes conduct which brings the judicial office into disrepute.

2. Said conduct of Respondent does not constitute a violation of Article V, § 17(b) of the Pennsylvania Constitution.

3. Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

MORRIS, J., files a Concurring Opinion.

## CONCURRING OPINION BY Judge MORRIS.

I concur in the conclusion that Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

I also agree with the analysis concluding that Respondent's conduct is not covered by Article V, § 17(b)—dealing with "activity prohibited by law"—since the plain wording and context indicate that the relevant portion of that Section applies to "justices and judges," but not to justices of the peace.

However, I wish to record my continuing discomfort with the consistent overuse of that portion of § 18(d)(1) which speaks of "bring[ing] the judicial office into disrepute"—a provision which is vague in nature and which, due to the workings of § 16(b), is most severe in its ramifications. For the reasons which I expressed in my dissent in *In re Berry*, 979 A.2d 991 (Pa. Ct.Jud.Disc.2009), I believe that the charge of "bringing the judicial office into disrepute" should be reserved for the most extreme examples of misconduct.[1] Instead, the charge seems to be included in almost every case.

In the instant case, the task of finding a basic and more specific charge is difficult. As noted, the "activity prohibited by law" provision of § 17 is unavailable due to the wording of that section. At first blush, it would appear—as it did to me—that Rule 2A of the Rules Governing Standards of Conduct of Magisterial District Judges would apply. That Rule demands that District Judges "respect and comply with the law." Since a criminal conviction evidences a manifest failure to comply with the law, a charge under Rule 2A would seem appropriate. However, in *Harrington*, 587 Pa. 407, 899 A.2d 1120 (2006), the Supreme Court stated that Rule 2A applies only to conduct relating to "the decision-making process."[2]

---

ble with the discharge of his duties as a magisterial district judge, and was not a violation of Rule 13. The holding that it was conflicts with our holding here (as well as with our holding in *Walters*) and is overruled.

So it is in this case. Respondent's conduct, though prohibited by law, cannot be construed as activity incompatible with the expeditious, proper and impartial discharge of the duties of a magisterial district judge, and, as in *Walters*, is not a violation of Rule 13. Thus, this Respondent's conduct was not such that violated a rule of the Rules Governing the Conduct of Magisterial District Judges as was the case in *Joyce and Terrick, Strock, Kelly* and *Zoller*, and, consequently, does not trigger an automatic, derivative violation of Article V, § 17(b) of the Constitution.

1. In a rejoinder to my dissent in *Berry*, the plurality opinion suggested that I was attempting to create law. My views, however, are confirmed by a re-reading of the relevant cases—an exercise which I recommend to my colleagues. *See In re Smith*, 687 A.2d 1229, 1238 (Pa.Ct.Jud.Disc.1997), referring to "conduct which is so extreme" that it brings the office into disrepute.

2. A charge under Rule 1 which commands that District Judges observe "high standards of conduct" might have been available since conduct resulting in a criminal conviction represents a very low standard of conduct. However, such resort to the Rules would involve substitution of one vague provision for another.

It might be desirable to amend the Rules in one or both of two ways. Either the elements of Article V, § 17(b) could be incorporated into the Rules applicable to Magisterial District Judges or existing Rule 2A could be clarified to include "compliance with the law" whether or not related to the actual decision-making process. Either of these changes would permit the Court to first consider clear-cut and indisputable charges before separately considering whether the misconduct arises to the extreme level required for a finding of "disrepute" which is frequently an issue as to which reasonable minds might differ.